# Exhibit A

**TO: SFPUC** 525 Golden Gate Ave, SF California 94102

**FR: Cory A. Horton, Sr**

**DATE:  April 1, 2022**

**REF: Wrongful Termination, Deprivation Rights, Violation of Due Process**

### a.) STATEMENT OF FACTS

SFPUC denied me due process, equal protection under the law and wrongfully terminated me Cory A. Horton, Sr a permanent employee on November 30th 2021 retaliated against my medical leave & disability & as victim of a violent crime while on duty.  Despite having an open restraining order from DA for an assault by multiple persons still at large in the work area many who were also never identified along with multiple incidents.  They denied reasonable accommodations as victim.  They terminated me for illegal reasons directly violating a multitude of laws including **California Labor Code §96(k) §230.5 230(c) 230(e) & 230(f) 230.1 PERS's CGC §21153, CERA's CGC §31721, United States 14th Amendment, Color of Law under 42 USC §1983, & Skelly Mandate.**

SFPUC also failed to provide me the protections and security that it provides without hesitation to all its other employees thus creating a working environment that was unsafe, injurious, intolerable, and hostile. The SFPUC and its employees engaged in illegal activities that led to a direct violation of my right to work, pursuit of happiness and liberties.  The SFPUC employees conspired against my rights to improve my wellbeing by constant threat of force, intimidation thus causing injuries and direct interference with my freedom to enjoy my rights ensured by the United States Constitution.  SFPUC blatantly denied me due process.  SFPUC's use of constructive discharge created intolerable unsafe working conditions which posed a direct threat to my life, my freedoms, my future, and welfare of my family.  Upon my inability to return due to severe medical conditions ascertained while on duty SFPUC its employees terminated me from my job using false information, hearsay, and conjured statements to further its case creating severe preventable injuries upon me despite having no previous issues with my employer.  *SFPUC was made of aware of my violent assaults, restraining order and made no attempts to ensure my safety upon future returning and refused to help me identify resources needed.* SFPUC denied me the opportunity to be reassigned properly or work remotely until such threats were reduced as a result creating an unprecedented threat to my personal well-being.  I applied for **5260 Regulatory Specialist PEX5620-109411** and was denied the opportunity to do so by EEO & by Rick Nelson.

SFPUC used illegal tactics to deny me rights ensured by the United States Constitution by not following it's the states well established due process procedures for impaired workers.  These events contributed to severe agitation of my existing mental disability, present & future financial security, work injury, physical body & wellbeing.  Furthermore, these events have contributed to significant loss of income, loss of dream job career and ability to return the profession indefinitely.  Also, the development of severe new PTSD diagnosis, increased anxiety, marital problems, domestic problems, mental anguish, depression, financial ruin and reinjuries of my physical body.  Furthermore, I also ascertained a permanent disability from mental trauma. Loss of retirement, medical, dental, loss of future opportunities, and investment accounts.  SFPUC and its employees abused it power to commit acts against me that contributed to a direction violation of my rights such as due process via blatant disregard of longstanding state and city policy. It is my belief that SFPUC may have also committed a fraud against the United States of America with no regards to the consequences. These events have devasted my life and caused extreme hardships

1

creating severe debilitation.  My life and health is in ruins and not enjoyable. I have faced humiliation and shame along with emotional incapacitation in a manner that has lessened the value of my life.  I can no longer provide for my family and not sure how I will recover my sanity.  These events shattered my life and I'm barely holding on due these circumstances and actions of SFPUC.

### b.)  CLAIMS

The actions of SFPUC and its employees have created both prejudice and hardship for myself and my dependents in a manner that is unpreceded and illegal per PERS and CERA guidelines.  These actions are in direct violation of **CGC §815.6 and 42 U.S.C. §1983.**  SFPUC and its employees failed to provide me a medically impaired permanent & disable worker with the full panoply of due process before separating me and these actions have caused severe injury to me as a result.

SFPUC at no time had the right or power to summarily remove, separate, or terminate me a permanent employee of which they consider to be disabled. In fact, **employers have a duty** to refrain from doing so because the power to make such determinations is vested exclusively with the applicable public employee retirement board. Under the clearly defined due process system, jurisdiction for determining whether a permanent public employee is disabled and accordingly entitled to either a disability retirement or their continued employment, is delegated by statute to the applicable retirement system's retirement board. (See, for example, **California Government Code (CGC) §31725.** "Permanent incapacity for the performance of duty shall in all cases be determined by the board."

In separating me from my job, wages, and benefits,  SFPUC and its employees acted as though it had an unfettered right to unilaterally terminate me without providing any **process** to contest the employer's decision. At no time was I given such a right to contest nor appear before the retirement board.  Although its human resource managers were aware of the *Skelly* **mandate** when it comes to terminating an employee for medical reasons.  SFPUC and its employers blatantly denied me those rights in a manner that was debilitating.  They acted with no regards to laws established or consequences.  SFPUC and its management denied me the process employees are due to challenge the employer's conclusion concerning by disability and rather I should be terminated despite being disabled and unable to work. SFPUC and its management suggested that I a disabled employee pursue other options such as SDI, social security, LTD benefits or even a disability pension.  SFPUC and its employees terminated me in November of 2021 before providing me the process outlined in the due process paradigm for proving disability.

The **"means"** or **due process** procedures mandated by PERS and CERA, and by which the issue of disability is determined, consist of three phases: (1) the application phase, (2) an administrative evaluation phase, including an administrative evaluation hearing if necessary, and (3) the right to seek judicial review were all denied by SFPUC and never mentioned.

Furthermore, I was denied the mandatory application process nor given any knowledge of such rights which  is governed by **CGC §31721(a).** This section includes a *"permissive" and a "mandatory"* application process. Under the *"permissive" section*, the Legislature provided all parties with the right to file, meaning the employer may file even though the employee believes she/he can do the job, and the employee may5 also file without the employer's permission. I was told by Dena Narbaitz on multiple occasions that no such rights existed, and that the decision of termination was final if I did not return to work by the given dates included in her memo regardless of my severe impairments and existing current medical condition.

SFPUC failed to execute its mandatory requirements and went beyond reasonable means to conceal any such information which would have led me to believe these options were available.  They failed to apply

2

for disability of my behalf and fired me for medical reasons in direct violations of **CGC §31721(a)** which states *Except that an <u>employer may not separate</u> because of disability a member otherwise eligible to retire for disability but shall apply for disability retirement of any eligible member believed to be disabled, unless the member waives the right to retire for disability and elects to withdraw contributions or to permit contributions to remain in the fund with rights to service retirement as provided in Article 9 (commencing with §31700).* The clear and unambiguous language of CGC §31721(a) is that an employer "... may not separate ... <u>but shall apply</u> for disability retirement. ..." This language describes a mandatory duty.

The operative language of **PERS's CGC §21153** is identical to the operative language of **CERA's CGC §31721**. Both statutes govern the rights of the disabled and the concomitant duties of their employers. Under both PERS and CERA, the Legislature imposed a clear mandatory duty upon the employer precluding it from separating the "disabled" worker and further imposing upon it the obligation to file an application for disability retirement with the applicable administrative body on the employee's behalf

Due to this blatant neglect of mandatory duties, deprivation of rights and denial of due process SFPUC has created an enormous injury on my current condition and created overwhelming economic hurdles of which should have never existed for disabled and impaired workers. The repercussions of these activities have devasted my wellbeing and caused irreparable permanent damages physically, mentally, emotionally and financially.

SFPUC at no time filed the mandatory application on my behalf and the evidentiary burden of proving disability was inverted and transferred to me. As a result, I was forced to mitigate my own losses in state of impairment and disability. I was forced to prove my claim that I could no longer perform my job while under medication and a disabled state at my own expense with no assistance causing severe injury to my wellbeing during this time causing several emergency issues. SFPUC did not care that these events contributed to greater injury, nor they care of my lack of resources in doing so. I was never informed of any hearing at the retirement board and perhaps SFPUC appeared alone forcing the retirement board to violate its fiduciary duties to me an injured employee. SFPUC decision led to further denial of due processes that would have existed in ***Phase 2 & 3 regarding*** neglecting its mandatory duty of referring me to the retirement board. SFPUC as a public entity, it is under a mandatory duty to file the application and refrain from separating until disability is determined but failed to do so when it terminated me in November of 2021 months during the holidays.

Furthermore, SFPUC was acting under **Color of Law under 42 USC §1983** when I was wrongfully removed or terminated from my job, a constitutionally protected property right, without due process. SFPUC neglected to abide by the mandatory requirements established **CGC §31721(a)** which would have allowed me to go before the board as a disabled employee for examination of benefits rather than be medically separated. It would have also allowed me to contest my employer's decision regarding the termination giving me an opportunity to not be severed from my constitutional rights. When SFPUC terminated me prior the board rendering a decision it denied me of such long standing mandatory laws in place that would have limited my injuries and financial hardships. In addition, the Fourteenth Amendment to the United States Constitution places procedural constrains on the actions of government which cause a deprivation of interest that enjoy the stature of a property right within the meaning of the Due Process Clause. These property interests, which are subject to due process protections, are not created by the federal constitution but rather are created and their dimensions defined by existing rules or understandings that stem from an independent source, such as state law. It is well settled in California that a public employee subject to discharge (separation) only for cause has a constitutionally protected property interest in continued employment. In California, permanent public employees are entitled to a

3

pre-determination hearing and a post-termination evidentiary hearing bearing on the issue of the decision to terminate. There is no significant distinction for the purpose of constitutional due process analysis between forced disability retirement and discharge.

In California, when the employer seeks to "medically" terminate an employee, the source of the due process protection and the parameters of that protection emanate not only from the local employer's rules and regulations, but additionally from the applicable state disability retirement statutes, such as PERS and CERA. The entitlement to a disability retirement has been declared to be a property right protected by due process an entitlement which vests upon the commencement of employment. If employees fired for gross misconduct can still receive damages for deprivation of the job without due process, then surely a disabled worker terminated only because of his or her disability is entitled to at least the same protection. Moreover, where the employer takes the employee's job, a vested property right, without due process, it may be held liable for damages under **42 USC §1983**.

### c.) SUMMARY

All permanent public employees perceived to be disabled by their employers must be provided with the due process protections as are other permanent employees removed for cause. When the employer does not, it does so at its own peril.

### d.) DEMAND FOR RELIEF

**Compensatory Damages** – $18,750,000

- Mental anguish - $1,000,000 (50K + 20yrs) [27K outpatient 5K Therapist 10K Psychiatrist 5K Treatment 3K Medication]
- Future medical expenses - $1,000,000 (50K + 20yrs) [27K outpatient 5K Therapist 10K Psychiatrist 5K Treatment 3K Medication]
- Future lost wages - $5,750,000 ($150,000 X 25 years + Retirement Pension + Investments)
- Long-term physical pain and suffering - $2,500.000 (100K + 25yrs)
- Loss of consortium -$2,000,000 (100K + 20yrs)
- Inconvenience - $500,000.
- Loss of enjoyment of life - $2,000,000 (100K + 20 years)
- Loss of opportunity - $4,000,000 (Real-estate investment + small business + removal from industry)

## Financial Costs, Bills and Special Damages

Cost of Medical Equipment & treatment, Cost of Medication, Damaged or Lost Property, Expenses Paid Out of Pocket, Hospital Stay, Lost Wages, Medical Bills, Rehabilitation.

## Pain and Suffering – General Damages

Emotional Turmoil, Disruption of Daily Lifestyle, Loss of Enjoyment, Loss of Consortium, Physical Pain, Recklessness or Gross Negligence (for injuries resulting from another party)and of course, Stress.

**Back Pay -** *$192,000*

**Economic Damages** -- $6,247,000 total dollar losses over the course of 45 years ($138,822 X 45yrs = $6,247,000)

**TOTAL - $25,369,000.00**

**e.) LEGISLATION / CASELAW**

**California's Retirement System**

The following description of the Public Employees' Retirement System, codified at California Government Code (CGC) §§2200 *et seq.* (PERS), and the 1937 County Employees' Retirement Act, codified at CGC §§3145 *et seq.*(CERA) is set forth briefly below.

**PERS**

PERS administers a trust fund valued in excess of $160 billion, is over-funded for most of its employer members, and covers in excess of one million workers. Participants include all state employees, state university employees (except teachers), and most local agencies (e.g. cities, special districts, and nearly all non CERA counties). Employee members are divided into various categories (see CGC §20370).

**CERA**

**The Legislature's Intent in Creating the System**

**Sections 31720 - 31726.5**

PERS and CERA were established by the Legislature to provide a means for removing incapacitated workers for the good of the public service to ensure against a continuing financial drain on taxpayers. The second purpose, flowing directly from the first, was to create a system whereby the *employees removed would not suffer prejudice or economic hardship.*

In 1970, the Legislature amended PERS and CERA, *emphasizing its purpose establishing an economic safety net to ensure that when an employee becomes incapacitated, she/he is not left in the position of being without either a job or a disability pension;* that is, the employee will remain on paid status with the employer until such time as she/he is found to be disabled. If found by the retirement board to be disabled, the employee moves from the employer's payroll to the retired employee's payroll and begins receiving a disability retirement.

5

As to PERS, the Legislature declared its purpose in creating it as, "...to effect economy and efficiency in the public service by providing a means whereby employees who become superannuated or otherwise incapacitated may, without hardship or prejudice, be replaced by more capable employees, and to that end provide a retirement system consisting of retirement compensation and death benefits." ***CGC §20001***

As to CERA, the Legislature declared its purpose as, "...[T]o recognize a public obligation to county and district employees who become incapacitated by age or long service in public employment and its accompanying physical disabilities by making provision for retirement compensation and death benefit as additional elements of compensation for future services and to provide a **means** by which public employees who become incapacitated may be replaced by more capable employees to the betterment of the public service without prejudice and without inflicting a hardship upon the employees removed." (Emphasis added) **CGC §31451.**

*Stephens v. County of Tulare*

(2006) 38 Cal. 4th 793

*Phillips v. County of Fresno*

(1990) 225 Cal. App. 3rd 1240

*Lozan v. County of Riverside*

(2006) 140 Cal. App. 4th 453

*Kelly v. County of Los Angeles*

(2006)141 Cal. App. 4th 910

*Hanna v. L.A. County Sheriff's Dept.*

(2002) 102 Cal. App. 4th 887

*City of Anaheim v. Nolan*

(2002) 104 Cal. App. 4th 1170

*Gasparin v. County of San Bernardino*

(2003) 106 Cal. App. 4th 183

Injuries Calculation formula

**MENTAL ANGUISH**

[https://www.alllaw.com/articles/nolo/personal-injury/two-ways-calculate-pain-suffering-settlement.html](https://www.alllaw.com/articles/nolo/personal-injury/two-ways-calculate-pain-suffering-settlement.html)

Multiplier Method

| | |
|---|---|
| Medical Expenses (Past & Future) | 1000000 |
| Multiplier (1.5 - 5) | 3 |

"Per Diem" Method

| | |
|---|---|
| Days of Pain | 10000 |
| Daily Rate | 100 |

Calculate & Compare

Calculate

| | |
|---|---|
| Multiplier Result | 3000000.00 |
| Per Diem Result | 1000000.00 |

7

Calculate & Compare

Calculate

Multiplier Result

3000000.00

Per Diem Result

1000000.00

**https://www.vanbibberlaw.com/free-personal-injury-calculator**

## INJURY CLAIM CALCULATOR

Starting form. Basic calculated fields sample.

Medical Expenses: Total medical payments even if not out of pocket expenses *

| 50,000 |
| --- |

If $0 input 0

Property Damage: Such as from motor vehicle accident. *

| 5000 |
| --- |

If $0 input 0

Lost Earnings: Did your personal injury keep you from working? *

| 192000 |
| --- |

If $0 input 0

Future Lost Income: If injury or treatment cause even further lost wages *

| 5000000 |
| --- |

If $0 input 0

Estimated Future Medical Expenses: Will your injuries cause further medical expenses? *

| 1000000 |
| --- |

If $0 input 0

General Damages Multiplier: Used to estimate total general damages, or pain and suffering in injury cases. See below for more information. The more pain and suffering the higher the value. (between 1.5 and 5) See more about the General Damages Multiplier`

| 3 ⌄ |
| --- |

9

**THE FIELD BELOW WILL SHOW THE DOUBLE OF THE NUMBER ABOVE.**

Economic Damages: The total of your damages or dollar losses

$ 6247000.00

Non-Economic Damages: Compensation for your pain and suffering based on the multiplier chosen.

$ 18741000

Target Settlement

$ 24988000

**INJURY CLAIM CALCULATOR**

Starting form. Basic calculated fields sample.

**Medical Expenses: Total medical payments even if not out of pocket expenses** *

50,000

If $0 input 0

**Property Damage: Such as from motor vehicle accident.** *

5000

If $0 input 0

**Lost Earnings: Did your personal injury keep you from working?** *

192000

If $0 input 0

**Future Lost Income: If injury or treatment cause even further lost wages** *

5000000

If $0 input 0

**Estimated Future Medical Expenses: Will your injuries cause further medical expenses?** *

1000000

If $0 input 0

**General Damages Multiplier: Used to estimate total general damages, or pain and suffering in injury cases. See below for more information. The more pain and suffering the higher the value. (between 1.5 and 5) See more about the General Damages Multiplier**

3

**THE FIELD BELOW WILL SHOW THE DOUBLE OF THE NUMBER ABOVE.**

Economic Damages: The total of your damages or dollar losses

$  6247000.00

Non-Economic Damages: Compensation for your pain and suffering based on the multiplier chosen.

$  18741000

Target Settlement

$  24988000

11

# Exhibit B



Mabutas, Maria <mmabutas@sfwater.org>
To:Cory Horton,Larcina, Albert
Cc:Cantiller, Alaine C
Thu, Feb 11, 2021 at 1:58 PM

I am not quite sure what this means, but attached is the completed DWC form. Thank you.


**From:** Cory Horton <hortoncory@ymail.com>
**Sent:** Wednesday, February 10, 2021 7:02 PM
**To:** Larcina, Albert <ALarcina@sfwater.org>; Mabutas, Maria <mmabutas@sfwater.org>
**Subject:** Form


> **CAUTION:** This email originated from **outside** of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.


Hi Al & Maria,


Enclosed is my DWC-1 form. If possible, can you please send me a copy of the completed form.  I hope and pray you can please understand my situation.

Most Sincerely,

 Cory Horton.



**Cantiller, Alaine C** <acantiller@sfwater.org>
To: Cory Horton
Thu, Feb 11, 2021 at 3:59 PM

Hi Cory,

I sent your forms to DHR to set up a claim on your behalf. I tried calling you at 951/292-8180 but was not able to get through. Is this a good phone number for you? I would like to discuss next steps with you.

*Thank you,*

**Alaine Cantiller**
Human Resources Analyst
Employee & Labor Relations, HRS
Mobile: (510) 936-0778 | Fax: (415) 553-4898
E-Mail: acantiller@sfwater.org
Pronouns: she, her, hers

San Francisco Water, Power, and Sewer | Services of the San Francisco Public Utilities Commission

RE: Leave
Yahoo/Inbox

**Mabutas, Maria** <mmabutas@sfwater.org>
To: Cory Horton, Larcina, Albert
Mon, Dec 14, 2020 at 12:39 PM

Thank you for your email. I had to reach out to HRS, Greg and Joan, inquiring if you had requested leave as I had no knowledge and received a workflow from you requesting time off though April.

I am finishing up my meeting and will call you back in a few minutes.

› Show original message

Mabutas, Maria <mmabutas@sfwater.org>
To:Cory Horton,Larcina, Albert
Mon, Dec 14, 2020 at 12:39 PM

Thank you for your email. I had to reach out to HRS, Greg and Joan, inquiring if you had requested leave as I had no knowledge and received a workflow from you requesting time off though April.

I am finishing up my meeting and will call you back in a few minutes.

From: Cory Horton <hortoncory@ymail.com>
Sent: Tuesday, February 23, 2021 12:32 PM
To: Mabutas, Maria <mmabutas@sfwater.org>
Subject: Re: DWC

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Greetings,

I did request an accommodation last year for transportation regarding me having to change my routes into work due to safety concerns not much help was provided.  During that period I also had encountered with my attackers at work.  The support was not there to help..

Sent from Yahoo Mail for iPhone

On Tuesday, February 23, 2021, 11:28, Mabutas, Maria <mmabutas@sfwater.org> wrote:

I have received the below email from Cory Horton and will be discussing with Alaine of HRS on completing the forms as I was not made aware of any of these incidents until now.

Thank you.

**From:** Cory Horton <hortoncory@ymail.com>
**Sent:** Tuesday, February 23, 2021 12:32 PM
**To:** Mabutas, Maria <mmabutas@sfwater.org>
**Subject:** Re: DWC

CAUTION: This email originated from **outside** of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Greetings,

I did request an accommodation last year for transportation regarding me having to change my routes into work due to safety concerns not much help was provided.  During that period

I also had encountered with my attackers at work.  The support was not there to help..

Sent from Yahoo Mail for iPhone

On Tuesday, February 23, 2021, 11:28, Mabutas, Maria <mmabutas@sfwater.org> wrote:

I have received the below email from Cory Horton and will be discussing with Alaine of HRS on completing the forms as I was not made aware of any of these incidents until now.

Thank you.



**Mabutas, Maria** <mmabutas@sfwater.org>
To: Cory Horton
Cc: Cantiller, Alaine C

Tue, Feb 23, 2021 at 12:45 PM

Good afternoon,

You may or may not recall, but I did receive approval from Michael Carlin for a temporary parking accommodation. You declined the parking accommodation that was offered to you because you didn't want to drive. You also requested to change your schedule since you were changing your commute and the ferry had limited service. Albert accommodated this request by switching schedules with you. We were aware of the incident that was reported on August 12, 2020 so I was able to complete the DWC form for this incident. However, I was not made of aware of any other incidents so I am seeking assistance from Alaine in HRS.

Good afternoon,


You may or may not recall, but I did receive approval from Michael Carlin for a temporary parking accommodation. You declined the parking accommodation that was offered to you because you didn't want to drive. You also requested to change your schedule since you were changing your commute and the ferry had limited service. Albert accommodated this request by switching schedules with you. We were aware of the incident that was reported on August 12, 2020 so I was able to complete the DWC form for this incident. However, I was not made of aware of any other incidents so I am seeking assistance from Alaine in HRS.



**Cory Horton** <hortoncory@ymail.com>
To: Cantiller, Alaine C                                                                                                    Fri, Feb 19, 2021 at 12:23 PM

Hi Alaine,

I recently got some information regarding my claim and it was quite different from our initial phone call.  Firstly, I stated to you that the information on form 1 was a partial explanation of my injury and if needed I could resubmit the form with additional information.  I was then told by you that such actions was not needed as the adjuster would contact me and give me the opportunity to further explain the entirety of the injury.

Unfortunately that didn't happen, I spoke with the adjuster 10mins ago and she explained that my injury claim was denied.   She then stated that she used only the information from my initial form and a police report provided to her by employer.

I'm really concerned about this situation as it seems highly unfair for her to use such little information.  The adjuster went on to state that she called me several time from unknown number and left messages of which she identified whom she was but I have no such information or call records.

I had to contact sf hr 5 times yesterday and demand that some one sleek with me and that's the only way I got the claims adjuster information.  I left several messages for Carol Herman with no returned calls as well.

In summary, I'm very concerned about this process and what appears to be a rush to judgement and denial of my claim unfairly.  This adjuster seems to have been injured herself multiple times while working in the tenderloin which is also very concerning as to her ability to be impartial and unbiased.

If possible can you please let me know why all this is happening as it appears very concerning and is contributing negatively to my personal health and well-being.

I ran into my 3 attackers on 3 occasions while at work and in my uniform.  Twice on lunch and once running errands for supplies of which I informally communicated to a sheriff officer.  Once in August, once in November and once in December.  I also requested an accommodation from my job regarding the injury of which they promised a parking pass of which I never received.

My last time running into my attackers occurred shortly before I left for family leave in December 3 of 2020.  Please know as I stated to you during our initial call it is these events that have led to my current conditions of which I'm seeking assistance with,

I had no idea that my conditions were a medical issue and it wasn't until I took several preliminary tests due to the increased occurrence of the pain affiliated with these injuries that I leaned I may be greatly ill from those events.

Sent from Yahoo Mail for iPhone

> Show original message

Cantiller, Alaine C
Fri, Feb 19, 2021 at 12:23 PM
Hi Alaine,

I recently got some information regarding my claim and it was quite different from our initial phone call.  Firstly, I stated to you that the information on form 1 was a partial explanation of my injury and if needed I could resubmit the form with additional information.  I was then told by you that such actions was not needed as the adjuster would contact me and give me the opportunity to further explain the entirety of the injury.

Unfortunately that didn't happen, I spoke with the adjuster 10mins ago and she explained that my injury claim was denied.   She then stated that she used only the information from my initial form and a police report provided to her by employer.

I'm really concerned about this situation as it seems highly unfair for her to use such little information.  The adjuster went on to state that she called me several time from unknown number and left messages of which she identified whom she was but I have no such information or call records.

I had to contact sf hr 5 times yesterday and demand that some one sleek with me and that's the only way I got the claims adjuster information.  I left several messages for Carol Herman with no returned calls as well.

In summary, I'm very concerned about this process and what appears to be a rush to judgement and denial of my claim unfairly.  This adjuster seems to have been injured herself multiple times while working in the tenderloin which is also very concerning as to her ability to be impartial and unbiased.

If possible can you please let me know why all this is happening as it appears very concerning and is contributing negatively to my personal health and well-being.

I ran into my 3 attackers on 3 occasions while at work and in my uniform.  Twice on lunch and once running errands for supplies of which i informally communicated to a sheriff officer.  Once in August, once in November and once in December.  I also requested an accommodation from my job regarding the injury of which they promised a parking pass of which I never received.

My last time running into my attackers occurred shortly before I left for family leave in December 3 of 2020.  Please know as I stated to you during our initial call it is these events that have led to my current conditions of which I'm seeking assistance with.

I had no idea that my conditions were a medical issue and it wasn't  until I took several preliminary tests due to the increased occurrence of the pain affiliated with these injuries that I leaned I may be greatly ill from those events.

From: Emergency Planning and Security <noreply@sfwater.org>
Sent: Wednesday, August 12, 2020 12:59 PM
To: Gale, Josh <JGale@sfwater.org>; Harp, Jeff <JHarp@sfwater.org>; Miron, Oscar <OMiron@sfwater.org>
Cc: Larcina, Albert <ALarcina@sfwater.org>
Subject: ALERT: Incident reported

The incident was reported by Larcina, Albert on Wednesday, August 12, 2020

Incident ID: 535

Incident Type: Assault

Date and Time of Incident: 8/12/2020 8:20:00 AM

Location of Incident: San Francisco

Description of Incident: Cory Horton (SFPUC Bldg Engineer) was coming to work and was exiting the Civic Center BART station at 8:20am. He snapped some photos of the exit route and of the street signs on Market St. The street drug dealers took offense and began posturing and yelling at Cory. From Market St and Grove (by the Burger King) three men started to charge. When Cory turned around he saw the lead man in a maroon sweatshirt running towards him with a knife in his hand. His motion was aggressive with intent to use the knife. Cory ran across Grove St towards the SF Public Library. The security guard (Gloria) at the Grove St entrance witnessed the entire event and even yelled at the assailants to stop. While running across Grove St. Cory stumbled and his phone fell out of his pocket. He made it to the library entrance and the assailants had stopped pursuit. One of the assailants kicked Cory's phone while it was on the ground. Cory was able to retrieve it, but the screen was cracked

The Library security guard was able to notify SF Sheriffs and Cory notified me (Albert Larcina) of what happened and his location. The SFPUC Engineering crew went to the library to assist. Sheriffs were on scene when we arrived.

While the law enforcement was searching for the suspects, Cory was giving a statement to a Sheriff when he noticed the suspects had returned. The Sheriff notified his superior and they were able to put the suspect with the knife into custody. The other two suspects evaded capture.
Cory positively identified the suspect and filled out an incident report (see attachment).

Description of Person(s) involved: Cory Horton SFPUC Bldg Engineer.
SF Library Security Gloria (Do not know last name)
Sheriff John Singh
Senior Deputy Bryant Mercado

Click here to view the full incident report form.

**From:** Emergency Planning and Security <noreply@sfwater.org>
**Sent:** Wednesday, August 12, 2020 12:59 PM
**To:** Gale, Josh <JGale@sfwater.org>; Harp, Jeff <JHarp@sfwater.org>; Miron, Oscar <OMiron@sfwater.org>
**Cc:** Larcina, Albert <ALarcina@sfwater.org>
**Subject:** ALERT: Incident reported

The incident was reported by Larcina, Albert on Wednesday, August 12, 2020

**Incident ID:** 535

**Incident Type:** Assault

**Date and Time of Incident:** 8/12/2020 8:20:00 AM

**Location of Incident:** San Francisco

**Description of Incident:** Cory Horton (SFPUC Bldg Engineer) was coming to work and was exiting the Civic Center BART station at 8:20am. He snapped some photos of the exit route and of the street signs on Market St. The street drug dealers took offense and began posturing and yelling at Cory. From Market St and Grove (by the Burger King) three men started to charge. When Cory turned around he saw the lead man in a maroon sweatshirt running towards him with a knife in his hand. His motion was aggressive with intent to use the knife. Cory ran across Grove St towards the SF Public Library. The security guard (Gloria) at the Grove St entrance witnessed the entire event and even yelled at the assailants to stop. While running across Grove St.

Cory stumbled and his phone fell out of his pocket. He made it to the library entrance and the assailants had stopped pursuit. One of the assailants kicked Cory's phone while it was on the ground. Cory was able to retrieve it, but the screen was cracked.

The Library security guard was able to notify SF Sheriffs and Cory notified me (Albert Larcina) of what happened and his location. The SFPUC Engineering crew went to the library to assist. Sheriffs were on scene when we arrived.

While the law enforcement was searching for the suspects, Cory was giving a statement to a Sheriff when he noticed the suspects had returned. The Sheriff notified his superior and they were able to put the suspect with the knife into custody. The other two suspects evaded capture.
Cory positively identified the suspect and filled out an incident report (see attachment).
**Description of Person(s) Involved:** Cory Horton SFPUC Bldg Engineer.
SF Library Security Gloria (Do not know last name)
Sheriff John Singh
Senior Deputy Bryant Mercado

Witnesses – AL Larcina, Darrell Andrews, Marcus, Josh Gale, Jeff Harp, Oscar Miron, John Singh, Ms. Gloria SF Library, Bryant Mercado, **Laura K. O'Heir,**



**Cory Horton** <hortoncory@ymail.com>
To: Larcina, Albert                                        Fri, Aug 14, 2020 at 4:48 PM

Hi Al,

If driving now I may need a change in schedule or some modifications.

Sent from Yahoo Mail for iPhone

›  Show original message

Cory Horton <hortoncory@ymail.com>
To:Larcina, Albert
Fri, Aug 14, 2020 at 4:48 PM
Hi Al,

If driving now I may need a change in schedule or some modifications.

 **Cory Horton** <hortoncory@ymail.com>                           Fri, Aug 14, 2020 at 4:47 PM
To: Larcina, Albert

Hi Al,

Yes I can drive in, definitely I can be in call this weekend.  I'll be back on Monday for sure.

Sent from Yahoo Mail for iPhone

> Show original message

Cory Horton <hortoncory@ymail.com>
To:Larcina, Albert
Fri, Aug 14, 2020 at 4:47 PM
Hi Al,

Yes I can drive in, definitely I can be in call this weekend.  I'll be back on Monday for sure.


Sent from Yahoo Mail for iPhone




**From:** Larcina, Albert <ALarcina@sfwater.org>
**Sent:** Wednesday, August 12, 2020 1:05 PM
**To:** Mabutas, Maria <mmabutas@sfwater.org>
**Subject:** FW: ALERT: Incident reported


Hi Maria,


Here is a copy of my incident report for what happened today.


Thanks,
Al



**Larcina, Albert** <alarcina@sfwater.org>
To: Cory Horton

Fri, Aug 14, 2020 at 4:17 PM

Hi Cory,

No worries. I hope you are feeling better.  I know it must be unnerving to think about being in this area and the police don't seem to help much. Have  you considered driving in. We can work something out to have you park in front of the building so you don't have to pay for parking and avoid all that chaos.

If your up for it, do you want to be oncall this weekend again?

Do me a favor and let Maria (cell 415 816-2069) know your status for next week. I will be out of town but available by phone if you need anything.

Thanks and have a restful weekend.

AL

> Show original message

---

Larcina, Albert <alarcina@sfwater.org>
To:Cory Horton
Fri, Aug 14, 2020 at 4:17 PM

Hi Cory,


No worries. I hope you are feeling better.  I know it must be unnerving to think about being in this area and the police don't seem to help much. Have  you considered driving in. We can work something out to have you park in front of the building so you don't have to pay for parking and avoid all that chaos.


If your up for it, do you want to be oncall this weekend again?

Do me a favor and let Maria (cell 415 816-2069) know your status for next week. I will be out of town but available by phone if you need anything.

Thanks and have a restful weekend.

AL

**From:** Harp, Jeff <JHarp@sfwater.org>
**Sent:** Wednesday, August 12, 2020 2:00 PM
**To:** Mabutas, Maria <mmabutas@sfwater.org>
**Cc:** Larcina, Albert <ALarcina@sfwater.org>; O'Heir, Laura <loheir@sfwater.org>; Fine, Ivy <IFine@sfwater.org>
**Subject:** Re: ALERT: Incident reported


Yes, I was on scene. I also alerts Justine, Rachel and Michael.

Jeffrey Harp, CPP

SFPUC

Head of Security & Asset Protection

Mobile: 415-314-1353

Sent from my iPhone, sorry for typos!


On Aug 12, 2020, at 1:58 PM, Mabutas, Maria <mmabutas@sfwater.org> wrote:

Thank you Albert. I'm glad Cory is okay albeit shaken up.


Jeff, Laura, Ivy – wanted to be sure you're all aware of this incident.



**Laura K. O'Heir, MPH, CIH, CSP**

**Interim Health & Safety Program Manager**

San Francisco Public Utilities Commission

Health & Safety Program

1325-A Evans Avenue

San Francisco, CA  94124

Cell (415) 265-4391

**From:** O'Heir, Laura <loheir@sfwater.org>
**Sent:** Wednesday, August 12, 2020 5:38 PM
**To:** Mabutas, Maria <mmabutas@sfwater.org>; Harp, Jeff <JHarp@sfwater.org>
**Cc:** Larcina, Albert <ALarcina@sfwater.org>; Fine, Ivy <IFine@sfwater.org>; Leano, Jeff <jleano@sfwater.org>; Neidorff, Judith <JNeidorff@sfwater.org>
**Subject:** RE: ALERT: Incident reported

Hi Everyone,

I'm very sorry to hear about this incident and I'm very happy to hear that Cory is okay. If he wants to be seen at a Workers' Compensation clinic, please give Cory the attached DWC-1 and a signed medical authorization form. Please ask his supervisor to complete the 5020 form as well.

I will be off the remainder of the week - please contact Jeff Leano (415) 254-2171 if additional safety support is needed.

Regards,

**Laura K. O'Heir, MPH, CIH, CSP**

**Interim Health & Safety Program Manager**

San Francisco Public Utilities Commission

Health & Safety Program

1325-A Evans Avenue

San Francisco, CA  94124

Cell (415) 265-4391

# Exhibit C



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

7021 2720 0000 5415 9627

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $                    Postmark
☐ Certified Mail Restricted Delivery $                    Here
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

RETURN RECEIPT REQUESTED

Postage
$

Total Postage and Fees
$

Sent To   S.F.P.U.C

Street and Apt. No., or PO Box No.   525 Golden Gate Ave

City, State, ZIP+4®   San Francisco CA 94102

PS Form 3800, April 2015 PSN 7530-02-000-9047        See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

7021 2720 0000 5415 9665

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $                    Postmark
☐ Certified Mail Restricted Delivery $                    Here
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

RETURN RECEIPT REQUESTED

Postage
$

Total Postage and Fees
$

Sent To   Controller Office Claims Division

Street and Apt. No., or PO Box No.   1390 Market St 7th Floor

City, State, ZIP+4®   San Francisco, CA 94102

PS Form 3800, April 2015 PSN 7530-02-000-9047        See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

7021 2720 0000 5415 9641

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $                    Postmark
☐ Certified Mail Restricted Delivery $                    Here
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

RETURN RECEIPT REQUESTED

Postage
$

Total Postage and Fees
$

Sent To   Jennefer L. Burke  EEO Program Mgr

Street and Apt. No., or PO Box No.   Dept human Resources

City, State, ZIP+4®   One South Van Ness Ave 4th flr  San Francisco CA 94103

PS Form 3800, April 2015 PSN 7530-02-000-9047        See Reverse for Instructions

# Exhibit D

**#1** Threatening phone call from Maria regaring taking leave

---

Mabutas, Maria <mmabutas@sfwater.org>
To:Cory Horton Larcina, Albert
Mon, Dec 14, 2020 at 12:39 PM

Thank you for your email. I had to reach out to HRS, Greg and Joan, inquiring if you had requested leave as I had no knowledge and received a workflow from you requesting time off though April.

I am finishing up my meeting and will call you back in a few minutes.

**#2** Me informing Maria that I was not being supported for accommodations and having encounters of attackers

**From:** Cory Horton <hortoncory@ymail.com>
**Sent:** Tuesday, February 23, 2021 12:32 PM
**To:** Mabutas, Maria <mmabutas@sfwater.org>
**Subject:** Re: DWC

> **CAUTION:** This email originated from **outside** of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Greetings,

I did request an accommodation last year for transportation regarding me having to change my routes into work due to safety concerns not much help was provided.  During that period

I also had encountered with my attackers at work.  The support was not there to help..

Sent from Yahoo Mail for iPhone

On Tuesday, February 23, 2021, 11:28, Mabutas, Maria <mmabutas@sfwater.org> wrote:

I have received the below email from Cory Horton and will be discussing with Alaine of HRS on completing the forms as I was not made aware of any of these incidents until now.

Thank you.

**#3** Copy of report sent ot Maria regarding my multiple attackers at large.

**From:** Emergency Planning and Security <noreply@sfwater.org>
**Sent:** Wednesday, August 12, 2020 12:59 PM
**To:** Gale, Josh <JGale@sfwater.org>; Harp, Jeff <JHarp@sfwater.org>; Miron, Oscar <OMiron@sfwater.org>
**Cc:** Larcina, Albert <ALarcina@sfwater.org>
**Subject:** ALERT: Incident reported

The incident was reported by Larcina, Albert on Wednesday, August 12, 2020

**Incident ID:** 535
**Incident Type:** Assault
**Date and Time of Incident:** 8/12/2020 8:20:00 AM
**Location of Incident:** San Francisco
**Description of Incident:** Cory Horton (SFPUC Bldg Engineer) was coming to work and was exiting the Civic Center BART station at 8:20am. He snapped some photos of the exit route and of the street signs on Market St. The street drug dealers took offense and began posturing and yelling at Cory. From Market St and Grove (by the Burger King) three men started to charge. When Cory turned around he saw the lead man in a maroon sweatshirt running towards him with a knife in his hand. His motion was aggressive with intent to use the knife. Cory ran across Grove St towards the SF Public Library. The security guard (Gloria) at the Grove St entrance witnessed the entire event and even yelled at the assailants to stop. While running across Grove St. Cory stumbled and his phone fell out of his pocket. He made it to the library entrance and the assailants had stopped pursuit. One of the assailants kicked Cory's phone while it was on the ground. Cory was able to retrieve it, but the screen was cracked.

The Library security guard was able to notify SF Sheriffs and Cory notified me (Albert Larcina) of what happened and his location. The SFPUC Engineering crew went to the library to assist. Sheriffs were on scene when we arrived.

While the law enforcement was searching for the suspects, Cory was giving a statement to a Sheriff when he noticed the suspects had returned. The Sheriff notified his superior and they were able to put the suspect with the knife into custody. The other two suspects evaded capture.
Cory positively identified the suspect and filled out an incident report (see attachment).
**Description of Person(s) Involved:** Cory Horton SFPUC Bldg Engineer.
SF Library Security Gloria (Do not know last name)
Sheriff John Singh
Senior Deputy Bryant Mercado

**From:** Larcina, Albert <ALarcina@sfwater.org>
**Sent:** Wednesday, August 12, 2020 1:05 PM
**To:** Mabutas, Maria <mmabutas@sfwater.org>
**Subject:** FW: ALERT: Incident reported

Hi Maria,


Here is a copy of my incident report for what happened today.


Thanks,
Al

# Exhibit E



<div align="right">

**Office of the General Manager**
525 Golden Gate Avenue, 13th Floor
San Francisco, CA 94102
**T** 415.554.3155
**F** 415.554.3161
**TTY** 415.554.3488

</div>

**CONFIDENTIAL**

November 30, 2021

Cory Horton                                                        <u>Via Email</u>
1540 Karen Drive                                         *hortoncory@ymail.com*
Benicia, CA 94510

*Re:      Notice of Medical Separation*

Dear Mr. Horton:

This letter is to inform you that you are hereby medically separated from your employment with the City and County of San Francisco ("City") as a Permanent Civil Service ("PCS") 7334 Stationary Engineer with the San Francisco Public Utilities Commission ("SFPUC"). This separation is a non-punitive separation and does not impact your ability to seek future City employment.

**Interactive Process**

You have been working as a Stationary Engineer at SFPUC Headquarters located at 525 Golden Gate Avenue in San Francisco (525GG) since December 12, 2019. In this role, you are responsible for opening and/or closing the building each day. This requires you to check all building systems and therefore your work is crucial to 525GG operations. Your job duties require you to be onsite; you cannot perform them remotely.

In August 2020, you reported that a gang assaulted you on the way to work while you were walking from Civic Center BART station. You filed a Workers' Compensation claim regarding this incident; however, the City's Department of Human Resources denied your claim.

From December 10, 2020, through March 3, 2021, the SFPUC approved you for a leave of absence for baby-bonding.

On February 22, 2021, you requested an accommodation seeking an extended leave of absence to give you time to recover so that you could return to work to perform your 7334 Stationary Engineer position with the SFPUC.

Since February 22, 2021, the SFPUC has interacted with you through the reasonable accommodation process and provided you with leave from March 4,

<div align="right">

**London N. Breed**
Mayor

**Anson Moran**
President

**Newsha Ajami**
Vice President

**Sophie Maxwell**
Commissioner

**Tim Paulson**
Commissioner

**Ed Harrington**
Commissioner

**Dennis J. Herrera**
General Manager

</div>

**OUR MISSION:** To provide our customers with high-quality, efficient and reliable water, power and sewer services in a manner that values environmental and community interests and sustains the resources entrusted to our care.



2021, through November 30, 2021. Since August 16, the SFPUC has repeatedly asked you to provide updated medical information so the SFPUC could evaluate your ability to return to work, but you have refused to do so.

**Notice of Intent to Medically Separate and Interactive Process**

On October 23, 2021, the SFPUC sent you a *Notice of Intent to Medically Separate and Interactive Process Meeting* (the "Notice") informing you of the SFPUC's intent to medically separate you from your 7334 Stationary Engineer position. The SFPUC scheduled an interactive process meeting for Wednesday, November 1, 2021 at 10:00 a.m., via telephone, to provide you full opportunity to meet with the appointing officer (or designee) to raise any objections or concerns that you may have with the SFPUC's Notice, and to allow you an opportunity to show why medical separation was not warranted. You had the right to bring a representative of your choice to the meeting or bring any individual who might have information pertaining to the recommendation that you be medically separated. You were also afforded the opportunity to submit any relevant materials you wished the SFPUC to consider in lieu of appearing at the meeting.

On November 1, 2021, Dena Narbaitz, SFPUC EEO Programs Senior Specialist, called you as scheduled in the October 23 Notice. During this call, you confirmed that you had no information – other than the information you had previously submitted – for the SFPUC to consider regarding the Notice.

**Summary**

You have been on a continuous leave since December 4, 2020, with personal medical leave starting on March 4, 2021. Unfortunately, this time away from work has not enabled you to recover and perform the essential functions of your job with or without reasonable accommodation. An indefinite leave is not a reasonable accommodation under federal or state law, and you have not provided any medical documentation showing that you would be able to return to work in any capacity by a date certain. Additionally, you have failed to engage in a good faith interactive process by declining to provide any additional information regarding your current medical restrictions.

Thus, based on my review of the records, medical separation is appropriate. Please note that this separation is non-punitive and in no way affects your ability so seek future City employment. **Your separation is effective at the close of business on Tuesday, November 30, 2021.** You may have post-separation appeal rights under an applicable Memorandum of Understanding.

Cory Horton – Notice of Medical Separation
November 30, 2021
Page **3** of **3**

The SFPUC thanks you for your service and wishes you well in your future endeavors.

Sincerely,

Dennis J. Herrera
General Manager

Enclosures:
      Attachment 1:      Notice of Intent to Medically Separate and
                              Interactive Process Meeting (w/o Attachments)
      Attachment 2:      Separation Report

c:      Maria Mabutas, 525GG Building Manager (w/o Enclosures)
      Rachel Gardunio, Acting Chief People Officer, HRS (w/o Enclosures)
      Dena Narbaitz, Acting EEO Programs Manager, HRS (w/o Enclosures)
      Official Employee Personnel File – Cory Horton (w/o Notice)

Attachment 1



**Human Resource Services**

525 Golden Gate Avenue, 3rd Floor
San Francisco, CA 94102
**T** 415.554.1670
**F** 415.553.4898

October 23, 2021

Cory Horton                                                      Via Email
1540 Karen Drive                                        *hortoncory@ymail.com*
Benicia, CA 94510

RE:     Notice of Intent to Medically Separate

Dear Mr. Horton:

I am writing to inform you the San Francisco Public Utilities Commission
("SFPUC") is recommending that you be medically separated from employment
as a Permanent Civil Service 7334 Stationary Engineer position. I have
scheduled an interactive process meeting for **Monday, November 1, 2021, at
10:00 a.m.** by telephone. *I will call you at your home telephone number, which
we have listed as (951) 292-8180. Alternatively, we can hold the interactive
process meeting via video conference. I can send you an invite for a video
meeting link to your email address (hortoncory@ymail.com). If your phone
number above is incorrect or you would prefer a video meeting, please contact
me at (415) 816-7012 or dnarbaitz@sfwater.org by **Friday, October 29, 2021**,
to provide me with a phone number where you can be reached or to request a
video meeting link.*

At this interactive process meeting, you will have the opportunity to meet with
me to raise any objections to or concerns you may have with the
recommendation. You may bring a representative of your choice with you to
this meeting. You can also bring other people who have information that may
assist the SFPUC as it considers this recommendation. You may also submit
any relevant materials you would like the SFPUC to consider.

The SFPUC's recommendation is based on the following facts:

1.      **Background Information on Workers' Compensation Injury**

You have been working as a Stationary Engineer at SFPUC Headquarters
located at 525 Golden Gate Avenue in San Francisco (525GG) since December
12, 2019. In this role, you are responsible for opening and/or closing the
building each day. This requires you to check all building systems and therefore
your work is crucial to 525GG operations.

In August 2020, you reported that a gang assaulted you on the way to work
while you were walking from Civic Center BART station. You filed a Workers'
Compensation claim regarding this incident; however, the City and County of
San Francisco's (City) Department of Human Resources denied your claim.

**London N. Breed**
Mayor

**Sophie Maxwell**
President

**Anson Moran**
Vice President

**Tim Paulson**
Commissioner

**Ed Harrington**
Commissioner

**Newsha Ajami**
Commissioner

**Michael Carlin**
Acting
General Manager

**OUR MISSION:** To provide our customers with high-quality, efficient and reliable water, power and sewer
services in a manner that values environmental and community interests and sustains the resources entrusted
to our care.



Cory Horton – Notice of Intent to Medically Separate
October 23, 2021
Page 2 of 6

## 2.  Leave of Absence and Interactive Process

From December 10, 2020, through March 3, 2021, the SFPUC approved you for a leave of absence for baby-bonding.

On February 22, 2021, you requested an accommodation seeking an extended leave of absence that would eventually enable you to return to work to perform the essential functions of your 7334 Stationary Engineer position with the SFPUC. Based on information provided by you and your healthcare provider, the SFPUC provided you, as a temporary accommodation, additional leave from March 4, 2021, through July 16, 2021.

On July 15, 2021, Rick Nelson, then-EEO Programs Manager, advised you that the SFPUC might not be able to extend your leave much further because your work unit is very small and you were hired for a specific onsite job at 525GG. You asked Nelson if you could be placed in a telecommunicating position, and Nelson informed you the SFPUC would need a medical note that has medical restrictions that did not place you completely "off work" before any other job could be considered. Nelson asked if you would be willing to drive to work as an accommodation. You refused to do so. You told Nelson you were not willing to commute by car. During your July 2 call, Nelson advised you that the SFPUC might need to proceed with medical separation if you could not return to work with or without a reasonable accommodation.

On July 16, 2021, Nelson sent you a letter extending your temporary accommodation of leave from July 17, through August 17, 2021.

On August 11, 2021, Carmen Pearson, 1233 EEO Programs Specialist, emailed you inquiring whether you would seek an extension of your leave, which was set to expire on August 17, and asked you to call her. You responded by email stating, "I'm still under treatment and have not been released back to work at this time." Pearson asked if you had "medical documentation extending your leave." You responded with a note from Jeryl Girton, N.P., placing you off work through September 30, 2021.

On August 12, 2021, you called Pearson regarding her August 11 email. During this call, you stated that you had submitted a medical note and needed to know if your leave was approved. Pearson informed you that Nelson ahd left the SFPUC, that she sent the August 11 email to check-in with you, and that she received your medical note placing you off work through September 30, 2021. Pearson asked you if you expected to return to work after September 30. You responded, "[I] cannot tell you anything." Pearson reminded you that your reasonable accommodation request was an interactive process. You told Pearson you did not know when you might be able to return to work, but you did not think your doctor would release you to come back to work due to the killings and shootings near 525GG. You screamed at Pearson stating that you were

Cory Horton – Notice of Intent to Medically Separate
October 23, 2021
Page **3** of **6**

assaulted "on the job," that there was a lot of crime near 525GG, and that you could not provide a timetable for coming back to work. You also screamed at Pearson accusing her of "interrogating" you and "disenfranchising [you] from treatment." Pearson asked you to stop yelling, however, you continued to yell at her stating that she was "alienating" you. Pearson told you that your accusations were false and she then ended the call because you would not stop yelling.

On August 16, 2021, I sent you a letter advising you that the SFPUC would like to you to return to work and proposed options for "moving forward." (Attachment 1.) The options were:

1. **Return to Work:** On September 30, 2021, you could return to work at 525GG with or without a reasonable accommodation.

2. **Citywide Job Search (CWJS):** If your health care provider was able to provide the SFPUC with medical restrictions that do not enable you to return to work at 525GG but, possibly, another location within the SFPUC or City, the SFPUC would refer you to the City's CWJS process.

3. **Medical Separation:** If you could not return to work under either option #1 or #2 above, the SFPUC would proceed with medical separation, which is a non-punitive process.

While you considered the "moving forward" options, the SFPUC provided you with an accommodation of leave **from August 18, through September 29, 2021. My August 16 letter expressly stated, "*Please note: this will be the last extension of your leave.*"**

On August 16, you responded to me by email. You stated there were "errors" and "untruthful statements" in my August 16 letter. You stated, "at no time did I give Rick [Nelson] any such permissions to record or disclose my personal medical information," and, "Also at not (sic) point have denied (sic) to return to work or refused to do so. My statement to Rick has been simply I m (sic) under treatment and have not been released by my doctor regarding any such manners (sic)." (Attachment 2.)

You also asked me to correct the supposed errors in my August 16 letter, to provide you with jurisdiction information for the Americans with Disabilities Act and you claimed Workers' Compensation laws were violated. You closed your email by stating, "Please know if any of the untruthful ir (sic) illegal information you have shared lead to adverse actions regarding my employment it will cause irreversible damages of which you and all persons regarding this matter will be held accountable for." (Attachment 2.)

On August 19, 2021, I sent you a letter responding to your August 16 email. (Attachment 2.) In this letter, I stated, "Nelson left the SFPUC on August 5,

Cory Horton – Notice of Intent to Medically Separate
October 23, 2021
Page **4** of 6

2021, and I am now the SFPUC Acting EEO Programs Manager assigned to work with you regarding your accommodation request. To evaluate your request, however, I need to confirm your medical restrictions, including your ability to return to work." I explained that I am available to assist you with returning to work and could work with you if your health care provider identified restrictions so the SFPUC could evaluate how to accommodate you, including participation in the Citywide job search process. This letter included another copy of the reasonable accommodation paperwork and stated, "Please return the completed forms to me if you believe that your medical restrictions have changed and that you can return to work with or without reasonable accommodations." My August 19 letter also confirmed that "an indefinite leave of absence is not a reasonable accommodation under federal or state law."

On August 19, 2021, you sent me an email claiming you could work by telecommuting because Nelson told you he was working remotely. Your August 19 email also claimed you had not been afforded your ADA (Attachment 3.)

On August 20, 2021, I responded to your August 19 email, again explaining that your job requires you to be at 525 GG each day, and that telecommuting was not an option. Your position is key to opening and/or closing the 525 GG each day and to check all building systems. You cannot perform your job duties from a remote or telecommuting role. I reiterated that the SFPUC would consider any medical restrictions (versus just placing you "off work"), that your health care provider could provide to either accommodate you at the SFPUC or assist you in a Citywide job search. (Attachment 3.)

Since August 20, 2021, the SFPUC has not received any information, including completed reasonable accommodation forms or medical notes, from you.

3.      **Medical Separation Recommendation**

You have been on a continuous leave since December 4, 2020, with your personal medical leave starting on March 4, 2021. Based on the doctor's notes the SFPUC has received to date, it does not appear that additional leave is reasonable under the circumstances as your doctor simply places you "off work" and has not indicated any definite return to work date.

Starting in July 2021, and through a letter dated August 16, 2021, the SFPUC informed you that a leave beyond September 29, 2021, was not acceptable because an indefinite leave is not a reasonable accommodation. Since August 16, the SFPUC has asked you to provide updated medical information so the SFPUC could evaluate your ability to return to work. But you have refused to provide the SFPUC with documents enabling you to return to work with or without a reasonable accommodation. Your inability to return to work and your failure to engage in a good faith interactive process, supports the SFPUC's recommendation to medically separate you from your 7334 Stationary Engineer position.

An interactive process meeting is set for **Monday, November 1, 2021, at 10:00 a.m.** This will be your opportunity to provide the SFPUC with sufficient information to demonstrate you can perform the essential functions of your 7334 Stationary Engineer position with or without an accommodation.

Please contact me at (415) 816-7012 or dnarbaitz@sfwater.org by **Friday, October 29, 2021, at 12:00 p.m.**, to confirm participation in this process. You are not required to attend this meeting. In lieu of attending this meeting, you may respond in writing and submit any relevant materials that you would like the SFPUC to consider before making a decision. If you choose this option, the SFPUC must receive these materials no later than **12:00 p.m. on Friday, October 29, 2021**. Please submit any information to me by email at dnarbaitz@sfwater.org.

4.    <u>**Other Options**</u>

As my August 16, 2021 letter advised, you may resign or, if you qualify, request a disability, service, or vested retirement. You may request additional information or schedule an appointment with a Benefits Analyst by calling 415-487-7000.  If you would like to pursue one of these options, please see the contact information below:

| Option | Contact |
|---|---|
| Voluntary Resignation | SFPUC Human Resource Services at (415) 554-1670 |
| Disability Retirement | Employees' Retirement System at (415) 487-7000 |
| Resignation with an option of vested retirement | SFPUC Human Resource Services at (415) 554-1670; and<br>Employees' Retirement System at (415) 487-7000 |
| Service Retirement | Employees' Retirement System at (415) 487-7000 |

During the COVID-19 pandemic, the SFERS office may be closed to the public. Please review the SFERS website (**www.mysfers.org**) for information. You may also be able to obtain information by emailing **sfersconnect@sfgov.org.**

My goal is to ensure you are aware of all your options. If you have any questions, please contact me at (415) 816-7012 or dnarbaitz@sfwater.org

Sincerely,

Dena Narbaitz
EEO Programs Senior Specialist
Human Resource Services

Cory Horton – Notice of Intent to Medically Separate
October 23, 2021
Page **6** of **6**

Attachments:
- <u>Attachment 1:</u> August 16, 2021 Letter to Cory Horton
- <u>Attachment 2:</u> August 19, 2021 Letter to Cory Horton with Email Exchange
- <u>Attachment 3:</u> August 19 and 20, 2021 Email Exchange with Cory Horton


c:      Maria Mabutas, Building Manager
        Hallie Albert, EEO Programs Manager
        RA File – Cory Horton

Attachment 2

**City and County of San Francisco**
Carol Isen
Human Resources Director



**Department of Human Resources**
*Connecting People with Purpose*
www.sfdhr.org

## SEPARATION REPORT

INSTRUCTIONS: Please complete the Separation Report to:

1. Document internal departmental processes. Please do not send to DHR.

2. Document that the employee separation is not a complete separation from City service, Separation Report must be completed by the sending department and submitted to the receiving department to be attached to the AP ESR.

3. To process a layoff. Please send to the DHR layoff coordinator.

4. To administer a settlement agreement involving the separation of the employee-submit documentation to your Client Services Representative. (Reference TER_RZA)*

Date of Request: 11/22/2021

Department Contact: Sari Mix                 Email: smix@sfwater.org                Phone: (415) 554-1614

### SECTION I: PERSONAL AND JOB INFORMATION

Name (Last, First, M.I.): Horton, Cory A.                          Employee I.D.: 201775

Job Code: 7334        Job Title: Stationary Engineer

Position Number: 01140002          Hourly Rate: $52.8500      Step: 1      Effective Date: 12/1/2021

Empl. Class: PCS                  Work Schedule:  Full-Time

Is the employee serving a probationary period at the time of the separation?   ☑ Yes   ☐ No

Is this a complete separation from City and County Service?   ☑ Yes   ☐ No

If no, continuing in:
Department Code: (Select One)   Status:_____ Job Code:_____ Effective Date:_____

Is employee granted leave pursuant to Civil Service Rule 120.31?   ☐ Yes  ☐ No

If no, is employee a transfer?   ☐ No   ☐ Yes, type of Transfer:  (Select One)

### SECTION II: SEPARATION INFORMATION

☐ Resignation

    ☐ Satisfactory Services (TER_RSS)     ☐ Unsatisfactory Services (TER_RUS)
                                                      (Form DHR 1-13 must be on file)

By the appointee: I hereby freely and voluntarily resign from the above position. I request approval of this resignation as of the effective date with the full understanding that once approved, I may acquire another position in this class only as provided in the rules of the Civil Service Commission (see employee copy and CSC Rules 114&119).

_____        _____
Employee Signature                                                                    Date

☐ Lay-off

    ☐ Involuntary Leave (PCS_LIL)     ☐ Elective Involuntary Leave (PCS_EIL)

    ☐ Involuntary Lay-off (PCS_LIO)     ☐ Voluntary Lay-off (PCS_LVO)

    ☐ (PV & EX Only): (Select One)

Reason for lay-off: (Select One)

Employee acknowledges receipt of the DHR information leaflet.

_____        _____
Employee Signature                                                                    Date

# SEPARATION REPORT

<u>DEPARTMENT USE ONLY</u>

☑ Termination

    ☐ Settlement Agreement (TER_RZA)
        *(Separation Report and Settlement Agreement must be forwarded to Client Services Rep.)*

    ☐ Release from appointment: (Select One) _____

    ☐ Release from probation: (Select One) _____

    ☐ Dismissal: (Select One)

    ☐ Terminated for cause (TFC) (TPV,NCS, & Exempts only)

    ☐ Automatic Resignation (ARS)

    ☐ Never Reported to Work (DSH)

    ☐ Death of an employee (DEA)

    ☑ Other (Specify): Medical Separation _____

☐ Retirement: (Select One) _____

<u>DEPARTMENT CERTIFICATION</u>

*The Appointing Officer/Authorized Designee named below hereby certifies that the information provided on this Separation Report is accurate, complete, and in compliance with applicable CCSF rules and policies.*

*Rachel Gardunio*                                     (415) 554-1670
Appointing Officer/Authorized Designee Signature               Telephone

Name/Title: Rachel Gardunio / Acting Chief People Officer

Department Number: 40 _____ Department Name: SFPUC-HR _____

Personnel File Forwarded?   ☐ Yes   ☐ No

Forwarded to:
    Department: _____ Contact: _____

-----------------------------------------------------------------------------------------------------------------------

<u>DHR USE ONLY</u>

Action Pending?   ☐ Yes   ☐ No

Analyst Name                             Telephone

☐ SR Ref Number: _____ Holdover Canvass: _____

Reference Number used for layoff actions: _____

Exhibit F

CITY AND COUNTY OF SAN FRANCISCO

OFFICE OF THE CITY ATTORNEY



DAVID CHIU
City Attorney

Brian Cauley
Assistant Chief of Claims

DIRECT DIAL:   (415) 554-3884
E-MAIL:          BRIAN.CAULEY@SFCITYATTY.ORG

May 17, 2022

Cory A Horton, Sr.
1500 Karen Dr.
Benicia, CA  94510

RE:   Claim of Cory A Horton, Sr. / Claim Number 22-01672

|  |  |
|---|---|
| Department: | PUCEMP  PUC Wide Employee Matters |
| Incident Date: | November 30, 2021 |
| Claim Filed: | April 26, 2022 |

**NOTICE OF ACTION UPON CLAIM**          **PLEASE TAKE NOTICE THAT**

An investigation of your claim filed with the City and County of San Francisco has revealed no indication of liability on the part of the City and County.  Accordingly, your claim is **DENIED**.

**WARNING**

Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a court action on this claim.  See Government Code section 945.6.  This time limitation applies only to causes of action arising under California law for which a claim is mandated by the California Government Claims Act, Government Code sections 900 et. seq.  Other causes of action, including those arising under federal law, may have shorter time limitations for filing.

You may seek the advice of an attorney of your choice in connection with this matter.  If you desire to consult an attorney, you should do so immediately.

Please also be advised that, pursuant to Code of Civil Procedure sections 128.7 and 1038, the City and County of San Francisco will seek to recover all costs of defense in the event an action is filed in this matter and it is determined that the action was not brought in good faith and with reasonable cause.

Very truly yours,

**DAVID CHIU**
City Attorney

Brian Cauley
Assistant Chief of Claims

FOX PLAZA ·1390 MARKET STREET, 7TH FLOOR · SAN FRANCISCO, CALIFORNIA 94102-5408
RECEPTION: (415) 554-3900 ·  FACSIMILE: (415) 554-8795

n:\claim\cl2022\22-01672\01602066.docx

Claim of:      Cory A Horton, Sr.            Claim Filed:   April 26, 2022

      I, Brian Cauley, say:  I am a citizen of the United States, over eighteen years of age, and not a party to the within action; that I am employed by the City Attorney's Office of San Francisco, Fox Plaza, 1390 Market Street, 7th Floor, San Francisco, CA 94102.

      That on May 17, 2022 I served:

          NOTICE OF ACTION UPON CLAIM

by placing a true copy thereof in an envelope addressed to:

      Cory A Horton, Sr.
      1500 Karen Dr.
      Benicia, CA  94510

      Following ordinary business practices, I sealed true and correct copies of the above documents in addressed envelope(s) and placed them at my workplace for collection and mailing with the United States Postal Service.  I am readily familiar with the practices of the San Francisco City Attorney's Office for collecting and processing mail.  In the ordinary course of business, the sealed envelope(s) that I placed for collection would be deposited, postage prepaid, with the United States Postal Service that same day.

      I declare under penalty of perjury that the foregoing is true and correct.

      Executed on May 17, 2022 at San Francisco, California.

                  Brian Cauley

             DECLARATION OF SERVICE BY MAIL

# Exhibit G

CITY AND COUNTY OF SAN FRANCISCO



DAVID CHIU
City Attorney

OFFICE OF THE CITY ATTORNEY

Brian Cauley
Assistant Chief of Claims

DIRECT DIAL:   (415) 554-3884
E-MAIL:        BRIAN.CAULEY@SFCITYATTY.ORG

May 9, 2022

Cory A Horton, Sr.
1500 Karen Dr.
Benicia, CA  94510

RE:   File Name:        Cory A Horton, Sr.
      File Number:      22-01672
      Incident Date:    November 30, 2021
      Filed:            April 26, 2022

Dear Sir or Madam:

Your correspondence was received by this office on April 26, 2022 and a review is underway.  When the review has been completed, I will be in touch with you.  If you have not been contacted within 30 days, you may call me directly at (415) 554-3884.

Very truly yours,

DAVID CHIU
City Attorney

Brian Cauley
Assistant Chief of Claims

FOX PLAZA ·1390 MARKET STREET, 7TH FLOOR · SAN FRANCISCO, CALIFORNIA 94102-5408
RECEPTION: (415) 554-3900 · FACSIMILE: (415) 554-8795

n:\claim\cl2022\22-01672\01600206.docx

# Exhibit H

Form **COL**

**Violation Warning**
**Denial of Rights Under Color of Law**

▶ Violation Warning—18 U.S.C. §242; 18 U.S.C. §245; 42 U.S.C. §1983

| Name and address of Citizen | Name and address of Notice Recipient |
|---|---|
| Cory A. Horton, Sr<br>1500 Karen Dr<br>Benicia. Ca 94510 | Dena Narbitz, Maria Mabutas, Halie Albert, Rachel Gardunio, Michael Carlin, Rick Nelson, Ronald Flynn, Greg Norby Cameron Pearson, Carol Lsen, Dennis Herrera, Barbara Hale, Steve Ritchie, Alan Johanson, |

Citizen's statement:

Every person in the United States is entitled to equal opportunity, equal protection and due process under the law and the ability to be heard before an impartial court of law.

I certify that the forgoing information stated here is true and correct.
**Citizen's signature**

▶   | Date ▶   4/22/2022

**Legal Notice and Warning**

**Federal law provides that it is a crime to violate the Rights of a citizen under the color-of-law. You can be arrested for this crime and you can also be held personally liable for civil damages.**

Attempting to cause a person to do something by telling that person that such action is required by law, when it is not required by law, may be a felony.

18 USC §242 provides that whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States ... shall be fined under this title or imprisoned not more than one year, or both.

18 USC §245 provided that Whoever, whether or not acting under color of law, intimidates or interferes with any person from participating in or enjoying any benefit, service, privilege, program, facility, or activity provided or administered by the United States; [or] applying for or enjoying employment, or any perquisite thereof, by any agency of the United States; shall be fined under this title, or imprisoned not more than one year, or both.

42 USC §1983 provides that every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**Warning**, you may be in violation of Federal Law and persisting with your demand may lead to your arrest and/or civil damages! Also understand that the law provides that you can be held personally responsible and liable, as well as your company or agency.

**You are advised** to cease and desist with your demand and to seek *personal* legal counsel if you do not understand the law.

Notice of Service:

I, _____ Cory Horton _____ certify that I personally delivered this notice to above named recipient and address on _____ 4/22/2022 _____ at _____ 525 Golden Gate Ave Sf, CA 94102 _____

Public Domain—Privacy Form COL(01)

# Exhibit I

Form **COL**

**Violation Warning**
**Denial of Rights Under Color of Law**

▶ Violation Warning—18 U.S.C. §242; 18 U.S.C. §245; 42 U.S.C. §1983

| Name and address of Citizen | Name and address of Notice Recipient |
|---|---|
| Cory A. Horton, Sr<br>1500 Karen Dr<br>Benicia. Ca 94510 | Brian Cauley  David Chiu<br>1390 Market St 7th floor San Francisco. Ca 94102-5408 |

Citizen's statement:

Every person in the United States is entitled to equal opportunity, equal protection and due process under the law and the ability to be heard before an impartial court of law.

I certify that the forgoing information stated here is true and correct.
**Citizen's signature**

▶                                                              | Date ▶        5/18/2022

**Legal Notice and Warning**

**Federal law provides that it is a crime to violate the Rights of a citizen under the color-of-law. You can be arrested for this crime and you can also be held personally liable for civil damages.**

Attempting to cause a person to do something by telling that person that such action is required by law, when it is not required by law, may be a felony.

18 USC §242 provides that whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States ... shall be fined under this title or imprisoned not more than one year, or both.

18 USC §245 provided that Whoever, whether or not acting under color of law, intimidates or interferes with any person from participating in or enjoying any benefit, service, privilege, program, facility, or activity provided or administered by the United States; [or] applying for or enjoying employment, or any perquisite thereof, by any agency of the United States; shall be fined under this title, or imprisoned not more than one year, or both.

42 USC §1983 provides that every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**Warning**, you may be in violation of Federal Law and persisting with your demand may lead to your arrest and/or civil damages! Also understand that the law provides that you can be held personally responsible and liable, as well as your company or agency.

**You are advised** to cease and desist with your demand and to seek *personal* legal counsel if you do not understand the law.

Notice of Service:

I, _____Cory Horton_____ certify that I personally delivered this notice to above named recipient and address on _____4518/2022_____ at _____1390 Market St 7th Floor  Sf, CA 94102_____

Public Domain—Privacy Form COL(01)

Exhibit J



Kilkenny, Patricia (RET) <patricia.kilkenny@sfgov.org>
To:hortoncory@ymail.com
Thu, May 12 at 12:12 PM

Hello,

I have reviewed our records and you have earned 0.864 years of service credit. Unfortunately, to be eligible to apply for disability retirement, a member must have at least 10 years of credited service. Your summary plan provisions, https://mysfers.org/wp-content/uploads/Plan-Provisions-Misc-603.pdf, provide that requirement.

You do have an account balance with SFERS that you are able to withdraw. The attached Termination Options Form explains your options. Should you wish to withdraw your account balance, please complete the form, have your signature notarized, and return the original to us, with your separation documents, to the address below.

Thank you,

Patricia Kilkenny

Member Services Manager

San Francisco Employees' Retirement System

1145 Market, Fifth Floor

San Francisco, CA 94103

V: 415.487.7060 (voicemail only)

C: 415.361.8993

E: patricia.kilkenny@sfgov.org

*SFERS is dedicated to securing, protecting, and prudently investing the pension trust assets, administering mandated benefit programs, and providing promised benefits.*

CONFIDENTIALITY NOTICE:

# Exhibit K



SCHEDULE A DOCUMENTATION

DATE: 3/23/21

FROM: Jeryl Girton, MSN, APRN, FNP-BC, PMHNP-BC

To Whom it May Concern:

This letter serves as certification that Cory Horton, DOB:12/3/1977, is an individual with a severe physical, intellectual, or psychiatric disability that qualifies him/her for consideration under 5 CFR 213.3102 (u), Schedule A hiring authority, appointment for Persons with Disabilities.

For further clarification I may be contacted at:

Jeryl Girton, MSN, APRN, FNP-BC, PMHNP-BC

2970 Camino Diablo

Suites 100 & 300

Phone: (925)360.5264

Fax: 415-296- 5299

Note: Proof of a disability is required for excepted service appointments – noncompetitive placement - under Schedule A, 5 CFR § 213.3102(u). Proof of disability is the term used to define any number of documents which attest to the fact that the candidate does indeed have a disability. A statement of job readiness, formerly a requirement under this statute, is no longer needed. The above statements meet the requirements for placement under Schedule A.

*Jeryl Girton, NP.*

Jeryl Girton, MSN, APRN, FNP-BC, PMHNP-BC

Jeryl Girton, MSN, APRN,
FNP-BC, PMHNP-BC
Lic #17754

Exhibit L

# Initial Treatment Plan
## 2/1/2022

## Demographics

| | | | |
|---|---|---|---|
| **Client Name:** Cory Horton (MCD) | | **Date:** 02/01/2022 | |
| | | **Time:** 10:00 AM | |
| **Admit Date:** 01/26/2022 | | | |
| **MR#:** 25281 | | **Date of Discharge:** | |
| **Date of Birth:** 12/03/1977 | **Age:** 44 | **Length of Stay:** | |

## Preliminary Diagnosis

| Code System | Code | Description | Action |
|---|---|---|---|
| DSM5 | 296.21 (F32.0) | Major depressive disorder, Single episode, Mild | |
| DSM5 | 309.81 (F43.10) | Posttraumatic stress disorder, unspecified | |

## Presenting Problem

Client is experiencing symptoms of PTSD due to a severe trauma that occurred over a year ago. Client has been experiencing depression, anxiety, flashbacks and nightmares. Client has been unable to work and is on a disability.

## Reason for Admission

Client wants to be able to resolve symptoms of PTSD and reduce his symptoms of depression. Client has been experiencing symptoms for over a year and it has affected his work and family life.

## Initial Resident Care Needs

Participation in an IOP care setting.
Education related to mental health illness
Completion of a mental health evaluation and psychotropic medication evaluation.
Identifying triggers related to depression, anxiety substance use and trauma responses.
EDOD: 4/26/2022 with option to extend

## Initial Treatment Objectives

Cory will participate in IOP level of care treatment 4 days per week.
Cory will participate in 8 psycho-educational groups per week.
Cory will cooperate with and complete mental health evaluations and medication management.
Cory will learn and implement coping skills to reduce symptoms of depression and trauma related disorders/symptoms.
Cory will learn to recognize his/her/their triggers related to depression and trauma symptoms.

## Initial Treatment Care Interventions

Therapist will administer comprehensive assessments to develop Master Treatment Plan within 7 days.
Therapists will facilitate psych-educational group sessions and document Cory's level of engagement.
Therapist will educate Cory on how to apply and track coping mechanisms to his daily life.
Therapist will provide education related to Cory's mental health diagnosis.

## Treatment Team Signatures

--Digitally Signed: 02/04/2022 08:03 pm    Group Facilitator Ike Kerhulas, LMFT, PhD

## Client Signatures

--Digitally Signed: 05/11/2022 07:11 pm CDT:   Cory Horton (MCD)

## Master Treatment Plan
02/08/2022

### Demographics

| | | | |
|---|---|---|---|
| **Client Name:** | Cory Horton (MCD) | **Date:** | 02/08/2022 |
| | | **Time:** | 8:30am |
| | | **Date of Original MTP:** | 02/01/2022 |
| **MR#:** | 25281 | **Admit Date:** | 01/26/2022 |
| **Date of Birth:** | 12/03/1977 | **Date of Discharge:** | |
| **Age:** | 44 | **Length of Stay:** | |

### Diagnosis

| Code System | Code | Description | Action |
|---|---|---|---|
| ICD10 2022 | F43.10 | Post-traumatic stress disorder, unspecified | |
| ICD10 2022 | F32.0 | Major depressive disorder, single episode, mild | |

### Explanation of Changes to Diagnosis

No change to diagnosis.

### Presenting Problem

Client is experiencing symptoms of PTSD due to a severe trauma that occurred over a year ago. Client has been experiencing depression, anxiety, flashbacks and nightmares. Client has been unable to work and is on a disability. Presenting problems include depression, anxiety, sleep disturbance, isolation, flashbacks of the traumatic incident and inability to complete daily activities.

### Reason for Admission

Client wants to be able to resolve symptoms of PTSD and reduce his symptoms of depression. Client has been experiencing symptoms for over a year and it has affected his work and family life. Client's symptoms of PTSD have caused significant depression and inability to work and support his family. Client wants to be symptom free of depression, have an active family life, be able to resume working and work through past traumatic events.

### Master Problem List

| Date | Dimension | # | Problem | Active | EST Completed | Date Resolved |
|---|---|---|---|---|---|---|
| 02/03/2022 | 3 | 1 | Post-traumatic stress disorder, unspecified | ☑ | 04/24/2022 | |
| 02/03/2022 | 3 | 2 | Major depressive disorder, single episode, mild | ☑ | 04/24/2022 | |

### Strengths and Weaknesses

| | |
|---|---|
| Strengths | Client is articulate and has some insight into his behavior. Client is receptive to engaging in treatment. |
| Needs | Client requires intensive therapy and medication management at this time. |
| Abilities | Client has the ability to live a productive life as evidenced by his past success at home and at work. |
| Preferences | Client prefers individual and group therapy. |

### Medication

| Psychotropic Medications | | | | | | |
|---|---|---|---|---|---|---|
| Other Medications | | **Status** | **PS** | **Medication** | **Indication** | **Dosage (Qty/Form)** | **Frequency** |

| | | |
|---|---|---|
| *Active* | **Zoloft** | 25 mg (1 tablet)   once a day |
| | *Start Date:* 01/26/2022 | *Stop Date:* |
| | *Med Notes:* 01/26/2022: Medication Added Zoloft 25mg PO QD- JH CMA | |
| | *Prescribing Provider:* | |

| Explanation of Changes | No changes. |
|---|---|

## Discharge Planning

| Anticipated Discharge Date | 04/24/2022 |
|---|---|
| Living Arrangements Plan | Client lives at home with his family. |
| Vocational/Education Plan | Client would like to be able to return to work after making progress in treatment. |
| Therapy (Specify individual, family or group treatment) | Individual and group therapy. |
| Discharge Transition Obstacles | Client has significant symptoms of PTSD and his depression has kept him from moving forward with his life. |

## Resident Section



| | I am involved in my care, including the development of my Master Treatment Plan. |
|---|---|
| | I am able to make recommendations about my care, my Master Treatment Plan and services provided for me. |
| | I have been able to express my views and make choices about my plan for care, treatment and services. |
| | I feel that the interventions involved in my Master Treatment Plan consider and respect my views. |
| | Conclusions of the assessments and recommendations for treatment, care, and services have been reviewed with me. |
| Comments | None. |

## Problem Details

| Client Name: Cory Horton (MCD) | MR#: 25281 |
|---|---|

## Dimension 3:

| Problem # | Descriptor | Diagnostic Criteria |
|---|---|---|
| 1 | Post-traumatic stress disorder, unspecified | PTSD Symptoms include: Recurrent, unwanted distressing memories of the traumatic event Reliving the traumatic event as if it were happening again (flashbacks) Upsetting dreams or nightmares about the traumatic event Severe emotional distress or physical reactions to something that reminds you of the traumatic event Trying to avoid thinking or talking about the traumatic event Avoiding places, activities or people that remind you of the traumatic event Negative changes in thinking and mood Negative thoughts about yourself, other people or the world Hopelessness about the future Memory problems, including not remembering important aspects of the traumatic event Difficulty maintaining close relationships Feeling detached from family and friends Lack of interest in activities you once enjoyed Difficulty experiencing positive emotions Feeling emotionally numb Changes in physical and emotional reactions Being easily startled or frightened Always being on guard for danger Self-destructive behavior, such as drinking too much or driving too fast Trouble sleeping Trouble concentrating Irritability, angry outbursts or aggressive behavior Overwhelming guilt or shame For children 6 years old and younger, signs and symptoms may also include: Re-enacting the traumatic event or aspects of the traumatic event through play Frightening dreams that may or may not include aspects of the traumatic event |

| Goal # | Long Term/Discharge/Graduation Goals |
|---|---|
| 1 | To reduce symptoms of PTSD so that daily functioning goes unimpaired. |

| Objective 1 | Date Created: 02/08/2022 | | Est. Completed: 03/08/2022 | | Resolved: |
|---|---|---|---|---|---|
| Short-Term Objective: | Over a period of 4 weeks, Cory will be able to express feelings relative to traumatic experience(s). | | | | |
| Interventions: | Group Therapy 2-3 time(s) per week. Individual Therapy 1 time(s) per week. | | | | |
| Staff Created: | Ike Kerhulas, LMFT, PhD, Group Facilitator | | Staff Responsible: | Ike Kerhulas, LMFT, PhD | |
| Reviewed/Updated: | Client is addressing his past trauma in therapy.; 2/8/2022 | | | | |

Goals: ☐ 1

| Objective 2 | Date Created: 02/08/2022 | | Est. Completed: 04/08/2022 | | Resolved: |
|---|---|---|---|---|---|
| Short-Term Objective: | Cory will be able to recount the images associated with the traumatic event(s) over an 8 week period. | | | | |
| Interventions: | Group Therapy 2-3 time(s) per week. Individual Therapy 1 time(s) per week | | | | |
| Staff Created: | Ike Kerhulas, LMFT, PhD, Group Facilitator | | Staff Responsible: | Ike Kerhulas, LMFT, PhD | |
| Reviewed/Updated: | Client is addressing past traumatic events in therapy.; 2/8/2022 | | | | |

Goals: ☐ 1

| Objective 3 | Date Created: 02/08/2022 | | Est. Completed: 03/08/2022 | | Resolved: |
|---|---|---|---|---|---|
| Short-Term Objective: | Cory will comply with medication management for the treatment of PTSD over a 6 week period. | | | | |
| Interventions: | Medication management as needed. | | | | |
| Staff Created: | Ike Kerhulas, LMFT, PhD, Group Facilitator | | Staff Responsible: | Ike Kerhulas, LMFT, PhD | |
| Reviewed/Updated: | Client is receiving medication management. | | | | |

Goals: ☐ 1

| Objective 4 | | Date Created: | 02/08/2022 | | Est. Completed: | 04/08/2022 | | Resolved: | |
|---|---|---|---|---|---|---|---|---|---|
| Short-Term Objective: | | Over a period of 4 weeks, Cory will be able to express feelings relative to traumatic experience(s). | | | | | | | |
| Interventions: | | Group Therapy 2-3 time(s) per week. Individual Therapy 1 time(s) per week | | | | | | | |
| Staff Created: | | Ike Kerhulas, LMFT, PhD, Group Facilitator | | | | Staff Responsible: | Ike Kerhulas, LMFT, PhD | | |
| Reviewed/Updated: | | Client is being encouraged in therapy to express his feelings of depression and the traumatic incidents he was subjected to.; 2/8/2022 | | | | | | | |

Goals: ☐ 1

# Problem Details

| Client Name: Cory Horton (MCD) | MR#: 25281 |
|---|---|

## Dimension 3:

| Problem # | Descriptor | Diagnostic Criteria |
|---|---|---|
| 2 | Major depressive disorder, single episode, mild | Client presents with symptoms of depression that include low self-esteem, difficulty concentrating and making decisions, feelings of hopelessness, poor motivation and feelings of worthlessness. Client has experienced sadness for several months an no longer gets pleasure out of past pleasurable activities. |

| Goal # | Long Term/Discharge/Graduation Goals |
|---|---|
| 1 | To reduce symptoms of depression so that daily functioning goes unimpaired. |

| **Objective 1** | **Date Created:** 02/08/2022 | | **Est. Completed:** 04/08/2022 | **Resolved:** | |
|---|---|---|---|---|---|
| Short-Term Objective: | Cory will develop/identify three strategies/plans for how to elevate mood by 04/08/2022. | | | | |
| Interventions: | Group Therapy 2-3 time(s) per week.<br>Individual Therapy 1 time(s) per week | | | | |
| Staff Created: | Ike Kerhulas, LMFT, PhD, Group Facilitator | | Staff Responsible: | Ike Kerhulas, LMFT, PhD | |
| Reviewed/Updated: | Client has started to address his depression in treatment.; 2/8/2022 | | | | |

Goals: ☐ 1

| **Objective 2** | **Date Created:** 02/08/2022 | | **Est. Completed:** 03/08/2022 | **Resolved:** | |
|---|---|---|---|---|---|
| Short-Term Objective: | Cory will identify three contributing factor(s)/issue(s) that are responsible for the depressed mood by 03/08/2022 | | | | |
| Interventions: | Group Therapy 2-3 time(s) per week.<br>Individual Therapy 1 time(s) per week | | | | |
| Staff Created: | Ike Kerhulas, LMFT, PhD, Group Facilitator | | Staff Responsible: | Ike Kerhulas, LMFT, PhD | |
| Reviewed/Updated: | Client is addressing the trauma that has caused him to feel depressed.; 2/8/2022 | | | | |

Goals: ☐ 1

| **Objective 3** | **Date Created:** 02/08/2022 | | **Est. Completed:** 03/08/2022 | **Resolved:** | |
|---|---|---|---|---|---|
| Short-Term Objective: | Cory will comply with medication management for impaired/diminished ability to concentrate. | | | | |
| Interventions: | Medication management as needed. | | | | |
| Staff Created: | Ike Kerhulas, LMFT, PhD, Group Facilitator | | Staff Responsible: | Ike Kerhulas, LMFT, PhD | |
| Reviewed/Updated: | Client is receiving medication management.; 2/8/2022 | | | | |

Goals: ☐ 1

| **Objective 4** | **Date Created:** 02/08/2022 | | **Est. Completed:** 04/24/2022 | **Resolved:** | |
|---|---|---|---|---|---|
| Short-Term Objective: | Cory will complete a list of activities that are pleasurable and engage in them twice weekly,. | | | | |
| Interventions: | Group Therapy 2-3 time(s) per week.<br>Individual Therapy 1 time(s) per week | | | | |
| Staff Created: | Ike Kerhulas, LMFT, PhD, Group Facilitator | | Staff Responsible: | Ike Kerhulas, LMFT, PhD | |
| Reviewed/Updated: | Client has not been engaging in past pleasurable activities.; 2/8/2022 | | | | |

Goals: ☐ 1

## Client Signatures

| --Digitally Signed: 05/11/2022 07:11 pm CDT:   Cory Horton (MCD) |
|---|

## Treatment Team Signatures

| --Digitally Signed: 02/08/2022 09:26 pm   Group Facilitator Ike Kerhulas, LMFT, PhD |
|---|

## Treatment Plan Review
### 03/08/2022

## Demographics

| | | | |
|---|---|---|---|
| Client Name: | Cory Horton (MCD) | Date: | 03/08/2022 |
| | | Time: | 5:00pm |
| | | Date of Original MTP: | 02/01/2022 |
| MR#: | 25281 | Admit Date: | 01/26/2022 |
| Date of Birth: | 12/03/1977 | Date of Discharge: | |
| Age: | 44 | Length of Stay: | |

## Diagnosis

| Code System | Code | Description | |
|---|---|---|---|
| ICD10 2022 | F43.10 | Post-traumatic stress disorder, unspecified | |
| ICD10 2022 | F32.0 | Major depressive disorder, single episode, mild | |

## Explanation of Changes to Diagnosis

No change to diagnosis.

## Master Problem List

| Date | Dimension | # | Problem | Active | EST Completed | Date Resolved |
|---|---|---|---|---|---|---|
| 02/03/2022 | 3 | 1 | Post-traumatic stress disorder, unspecified | ☑ | 04/24/2022 | |
| 02/03/2022 | 3 | 2 | Major depressive disorder, single episode, mild | ☑ | 04/24/2022 | |

## Summary of Progress

**Dimension 3:**

| Problem # | Descriptor | Long Term/Discharge/Graduation Goals |
|---|---|---|
| 1 | Post-traumatic stress disorder, unspecified | To reduce symptoms of PTSD so that daily functioning goes unimpaired.; |

Client has been experiencing symptoms of PTSD that include flashbacks and nightmares. Client reports feeling on edge in fear of being attacked as he was three times in the past. Client is dealing with the trauma in individual and group therapy. Client is looking to change the type or work he does in order to not be traumatized again.

| Problem # | Descriptor | Long Term/Discharge/Graduation Goals |
|---|---|---|
| 2 | Major depressive disorder, single episode, mild | To reduce symptoms of depression so that daily functioning goes unimpaired.; |

Client has demonstrated improvement in his symptoms of depression. Client has resumed daily activities and has expressed hope that his life will get better. Client has become more active with his family. Client is not experiencing suicidal ideation. His motivation has improved.

## New Problems/Goals/Objectives Added or Completed Since Last Review

None.

## Summary of Progress by Service

| Psychiatric Treatment | Client received psychiatric consultation but has decided not to take medication. Client has expressed that he doesn't like how the medication has made him feel. He has been educated on the potential benefits that medication can have on his condition. |
|---|---|
| Individual Therapy | Client participates well in individual therapy. Therapy has focused on resolving his trauma. Client still experiences flashbacks and nightmares due to the trauma he experienced. Client has expressed wanting to resolve his trauma without the use of medication. Client has focused on the depression he has experienced due to the trauma he was subjected to. Client is starting to feel more hopeful about the future and is engaging more with his family. Client has resumed more daily activities and has been looking for work. |
| Family Therapy | N/A |
| Milieu | N/A |
| Education | N/A |
| Recreation | Client engages in exercise and recreational activities with his family. |

## Critical Events & Interaction

| Client had to take a two week break from the Mission Connection program due to family concerns. |
|---|

## Therapeutic Leaves of Absence (LOA)

| N/A |
|---|

## Discharge Planning

| Anticipated Discharge Date | 04/24/2022 |
|---|---|
| Living Arrangements Plan | Client lives at home with his family. |
| Vocational/Education Plan | Client would like to be able to return to work after making progress in treatment. Client has started looking for a new job. |
| Therapy (Specify individual, family or group treatment) | Individual and group therapy. Client participates well in individual therapy. Client has participated in group therapy and is trying to increase the amount of groups he attends weekly. |
| Discharge Transition Obstacles | Client has significant symptoms of PTSD and his depression has kept him from moving forward with his life. |

## Justification for Continued Treatment

| Client continues to experience significant symptoms of PTSD that include flashbacks, nightmares, feeling unsafe and on edge, and anxiety. Client requires further treatment to resolve these issues. Client reports there are days when these symptoms are severe and affects his day to day activities. Client continues to experience symptoms of depression that include ongoing sadness, loss of pleasure in activities that he used to enjoy, irritability, difficulty concentrating and making decisions, isolation, and poor motivation. These symptoms have affected his family life and prevented him from being able to focus on getting a job. |
|---|

## Client Signatures

| --Digitally Signed: 05/11/2022 07:10 pm CDT:   Cory Horton (MCD) |
|---|

## Treatment Team Signatures

| --Digitally Signed: 03/18/2022 07:57 pm   Group Facilitator Ike Kerhulas, LMFT, PhD |
|---|

**Signature Required:** [                    ] [Sign]
Please enter your portal password to sign this document.

| | |
|---|---|
| **Client Name:** Cory Horton (MCD) | **Date:** 04/08/2022 |
| | **Time:** 8:00pm |
| | **Date of Original MTP:** 02/01/2022 |
| **MR#:** 25281 | **Admit Date:** 01/26/2022 |
| **Date of Birth:** 12/03/1977 | **Date of Discharge:** |
| **Age:** 44 | **Length of Stay:** |

## Diagnosis

| Code System | Code | Description | |
|---|---|---|---|
| ICD10 2022 | F43.10 | Post-traumatic stress disorder, unspecified | |
| ICD10 2022 | F32.0 | Major depressive disorder, single episode, mild | |

## Explanation of Changes to Diagnosis

No change to diagnosis.

## Master Problem List

| Date | Dimension | # | Problem | Active | EST Completed | Date Resolved |
|---|---|---|---|---|---|---|
| 02/03/2022 | 3 | 1 | Post-traumatic stress disorder, unspecified | ☑ | 05/24/2022 | |
| 02/03/2022 | 3 | 2 | Major depressive disorder, single episode, mild | ☑ | 05/24/2022 | |

## Summary of Progress
**Dimension 3:**

| Problem # | Descriptor | Long Term/Discharge/Graduation Goals |
|---|---|---|
| 1 | Post-traumatic stress disorder, unspecified | To reduce symptoms of PTSD so that daily functioning goes unimpaired.; |

Client has been experiencing symptoms of PTSD that include flashbacks and nightmares. Client reports feeling on edge in fear of being attacked as he was three times in the past. Client is dealing with the trauma in individual and group therapy. Client is looking to change the type or work he does in order to not be traumatized again. Client recently expressed that his symptoms of PTSD have gradually improved. He feels by moving his family out of state he will have the opportunity to fully recover.

| Problem # | Descriptor | Long Term/Discharge/Graduation Goals |
|---|---|---|
| 2 | Major depressive disorder, single episode, mild | To reduce symptoms of depression so that daily functioning goes unimpaired.; |

Client has demonstrated improvement in his symptoms of depression. Client has resumed daily activities and has expressed hope that his life will get better. Client has become more active with his family. Client is not experiencing suicidal ideation. His motivation has improved. Client reports recent improvement in his symptoms of depression. Client has demonstrated motivation to look for work. He is developing some optimism that he can recover and live a productive life.

## New Problems/Goals/Objectives Added or Completed Since Last Review

None. Client has not been consistent in attending individual therapy. Client needs to start participating more in group.

## Summary of Progress by Service

**Signature Required:** [                    ] [Sign]
Please enter your portal password to sign this document.

| **Signature Required:** | [ ] | Sign |
|---|---|---|

*Please enter your portal password to sign this document.*

| Individual Therapy | Client participates well in individual therapy. Therapy has focused on resolving his trauma. Client still experiences flashbacks and nightmares due to the trauma he experienced. Client has expressed wanting to resolve his trauma without the use of medication. Client has focused on the depression he has experienced due to the trauma he was subjected to. Client is starting to feel more hopeful about the future and is engaging more with his family. Client has resumed more daily activities and has been looking for work. Recently client has missed two individual therapy sessions. When he does attend sessions, he is receptive to addressing his emotional issues. He has done good work in therapy on dealing with his trauma, depression, plans for the future, being released from his job, and addressing family issues. |
|---|---|
| Family Therapy | N/A |
| Milieu | N/A |
| Education | N/A |
| Recreation | Client engages in exercise and recreational activities with his family. |

## Critical Events & Interaction

| Client had to take a two week break from the Mission Connection program due to family concerns. |
|---|

## Therapeutic Leaves of Absence (LOA)

| N/A |
|---|

## Discharge Planning

| Anticipated Discharge Date | 05/24/2022 |
|---|---|
| Living Arrangements Plan | Client lives at home with his family. |
| Vocational/Education Plan | Client would like to be able to return to work after making progress in treatment. Client has started looking for a new job. |
| Therapy (Specify individual, family or group treatment) | Individual and group therapy. Client participates well in individual therapy when he does attend. Client has missed two recent individual therapy sessions. Client has participated in group therapy and is trying to increase the amount of groups he attends weekly. He has been encouraged to increase his group participation. |
| Discharge Transition Obstacles | Client has significant symptoms of PTSD and his depression has kept him from moving forward with his life. |

## Justification for Continued Treatment

| Client continues to experience significant symptoms of PTSD that include flashbacks, nightmares, feeling unsafe and on edge, and anxiety. Client requires further treatment to resolve these issues. Client reports there are days when these symptoms are severe and affects his day to day activities. Client continues to experience symptoms of depression that include ongoing sadness, loss of pleasure in activities that he used to enjoy, irritability, difficulty concentrating and making decisions, isolation, and poor motivation. These symptoms have affected his family life and prevented him from being able to focus on getting a job. Client still requires treatment due to his ongoing symptoms of depression and PTSD. Due to the severity of his symptoms he requires additional treatment. The therapeutic support will allow him to find work, reduce his symptoms of depression, reduce his symptoms of PTSD, and have more self-confidence. Client needs to have a decrease in experiencing flashbacks and nightmares. Client has not been receptive to taking medication. |
|---|

## Client Signatures

| |
|---|

## Treatment Team Signatures

| --Digitally Signed: 04/17/2022 03:52 pm   Group Facilitator Ike Kerhulas, LMFT, PhD |
|---|

| **Signature Required:** | [ ] | Sign |
|---|---|---|

*Please enter your portal password to sign this document.*

**Signature Required:** [          ] [Sign]
Please enter your portal password to sign this document.

| | | | |
|---|---|---|---|
| **Client Name:** Cory Horton (MCD) | | **Date:** 05/08/2022 | |
| | | **Time:** 6:00pm | |
| | | **Date of Original MTP:** 02/01/2022 | |
| **MR#:** 25281 | | **Admit Date:** 01/26/2022 | |
| **Date of Birth:** 12/03/1977 | | **Date of Discharge:** | |
| **Age:** 44 | | **Length of Stay:** | |

## Diagnosis

| Code System | Code | Description | |
|---|---|---|---|
| ICD10 2022 | F43.10 | Post-traumatic stress disorder, unspecified | |
| ICD10 2022 | F32.0 | Major depressive disorder, single episode, mild | |

## Explanation of Changes to Diagnosis

No change to diagnosis.

## Master Problem List

| Date | Dimension | # | Problem | Active | EST Completed | Date Resolved |
|---|---|---|---|---|---|---|
| 02/03/2022 | 3 | 1 | Post-traumatic stress disorder, unspecified | ☑ | 06/24/2022 | |
| 02/03/2022 | 3 | 2 | Major depressive disorder, single episode, mild | ☑ | 06/24/2022 | |

## Summary of Progress
**Dimension 3:**

| Problem # | Descriptor | Long Term/Discharge/Graduation Goals |
|---|---|---|
| 1 | Post-traumatic stress disorder, unspecified | To reduce symptoms of PTSD so that daily functioning goes unimpaired.; |

Client has been experiencing symptoms of PTSD that include flashbacks and nightmares. Client reports feeling on edge in fear of being attacked as he was three times in the past. Client is dealing with the trauma in individual and group therapy. Client is looking to change the type or work he does in order to not be traumatized again. He would like to be his own boss as he doesn't ever want to be treated the way his employer has treated him. Client recently expressed that his symptoms of PTSD have gradually improved. He s still experiencing flashbacks and has fears about going outdoors due to the potential danger in the area he lives. Client reports having nightmares and night terrors but they have decreased recently. He feels by moving his family out of state he will have the opportunity to fully recover.

| Problem # | Descriptor | Long Term/Discharge/Graduation Goals |
|---|---|---|
| 2 | Major depressive disorder, single episode, mild | To reduce symptoms of depression so that daily functioning goes unimpaired.; |

Client has demonstrated improvement in his symptoms of depression. Client has resumed most daily activities and has expressed hope that his life will get better. Client has become more active with his family. Client is not experiencing suicidal ideation. His motivation has improved. Client reports recent improvement in his symptoms of depression. Client has demonstrated motivation to look for work. Client would like to have his own business which would allow him the opportunity to control his life more. He is developing some optimism that he can recover and live a productive life. Client's ability to concentrate and make good decisions for his life have improved with the improvement in his depression.

## New Problems/Goals/Objectives Added or Completed Since Last Review

None.

## Summary of Progress by Service

**Signature Required:** [          ] [Sign]
Please enter your portal password to sign this document.

| Signature Required: | | Sign |
|---|---|---|
| Please enter your portal password to sign this document. | | |

| | been open to taking Prazosin at night for nightmares and night terrors. He will consult with the physician on this. |
|---|---|
| Individual Therapy | Client participates well in individual therapy. Therapy has focused on resolving his trauma. Client still experiences flashbacks and nightmares due to the trauma he experienced. Client has expressed wanting to resolve his trauma without the use of medication. Client has focused on the depression he has experienced due to the trauma he was subjected to. The depression involves losing a job and career that he worked hard to achieve. The impact that the trauma has had on his life has been responsible for him feeling depressed. Client is starting to feel more hopeful about the future and is engaging more with his family. Client has resumed more daily activities and has been looking for work opportunities he can do on his own. Client is receptive to addressing his emotional issues in therapy. He has done good work in therapy on dealing with his trauma, depression, plans for the future, being released from his job, and addressing family issues. |
| Family Therapy | N/A |
| Milieu | N/A |
| Education | N/A |
| Recreation | Client engages in exercise and recreational activities with his family. |

## Critical Events & Interaction

| Client had to take a two week break from the Mission Connection program due to family concerns. |
|---|

## Therapeutic Leaves of Absence (LOA)

| N/A |
|---|

## Discharge Planning

| Anticipated Discharge Date | 06/24/2022 |
|---|---|
| Living Arrangements Plan | Client lives at home with his family. |
| Vocational/Education Plan | Client would like to be able to return to work after making progress in treatment. Client would like to have his own business. |
| Therapy (Specify individual, family or group treatment) | Individual and group therapy. Client participates well in individual therapy when he does attend. Client has missed two recent individual therapy sessions. Client has participated in group therapy and is trying to increase the amount of groups he attends weekly. He has been encouraged to increase his group participation. |
| Discharge Transition Obstacles | Client has significant symptoms of PTSD and his depression could be transition obstacles. Client feels moving to a new area would benefit him and his family. |

## Justification for Continued Treatment

| Client continues to experience significant symptoms of PTSD that include flashbacks, nightmares, night terrors, restlessness, feeling unsafe and on edge, and anxiety. Client requires further treatment to resolve these issues. Client reports there are days when these symptoms are severe and affects his day to day activities. There are days when he feels more stable. Client continues to experience symptoms of depression that include ongoing sadness, loss of pleasure in activities that he used to enjoy, difficulty concentrating and making decisions, and isolation. This has affected his family life and prevented him from being able to focus on a new career. Client still requires treatment due to his ongoing symptoms of depression and PTSD. Due to the severity of his symptoms he requires additional treatment. The therapeutic support will allow him to make a good career decision, reduce his symptoms of depression, reduce his symptoms of PTSD, and have more self-confidence. Client needs to have a decrease in experiencing flashbacks and nightmares. Client has not been receptive to taking medication. Client will consider taking blood pressure medication that could alleviate nightmares and night terrors. |
|---|

## Client Signatures

| |
|---|

## Treatment Team Signatures

| --Digitally Signed: 05/15/2022 07:03 pm  Group Facilitator Ike Kerhulas, LMFT, PhD |
|---|

| Signature Required: | | Sign |
|---|---|---|
| Please enter your portal password to sign this document. | | |

# Exhibit M

**Total Patient Charges: $3,553.54**
**Total Patient Payments:   $600.00**
**Total Outstanding Balance: $2,953.54**

| Date | Description | Patient Charges | Patient Payments | Balance |
|---|---|---|---|---|
| 04/25/2022 | Office Visit Katelyn Miskevics, LMFT | $175.00 | | $2,953.54 |
| 04/11/2022 | Therapy 45-min f/u no show/late cancel | $175.00 | | $2,778.54 |
| 04/04/2022 | Office Visit Katelyn Miskevics, LMFT | $175.00 | | $2,603.54 |
| 03/28/2022 | Office Visit Katelyn Miskevics, LMFT | $175.00 | | $2,428.54 |
| 03/17/2022 | Office Visit Jeryl Girton, NP | $250.00 | | $2,253.54 |
| 03/14/2022 | Office Visit Katelyn Miskevics, LMFT | $175.00 | | $2,003.54 |
| 03/07/2022 | Office Visit Katelyn Miskevics, LMFT | $175.00 | | $1,828.54 |
| 02/21/2022 | Therapy 45-min f/u no show/late cancel | $114.27 | | $1,653.54 |
| 02/07/2022 | Office Visit Katelyn Miskevics, LMFT | $175.00 | | $1,539.27 |
| 01/31/2022 | Office Visit Katelyn Miskevics, LMFT | $175.00 | | $1,364.27 |
| 01/24/2022 | Office Visit Jeryl Girton, NP | $250.00 | | $1,189.27 |
| 01/24/2022 | Office Visit Katelyn Miskevics, LMFT | $175.00 | | $939.27 |
| 01/10/2022 | Therapy 45-min f/u no show/late cancel | $114.27 | | $764.27 |
| 01/03/2022 | Office Visit Jeryl Girton, NP | $25.00 | | $650.00 |
| 11/15/2021 | Office Visit Katelyn Miskevics, LMFT | $25.00 | | $625.00 |
| 11/08/2021 | Office Visit Katelyn Miskevics, LMFT | $25.00 | | $600.00 |
| 11/01/2021 | Office Visit Katelyn Miskevics, LMFT | $25.00 | | $575.00 |
| 10/25/2021 | Office Visit Katelyn Miskevics, LMFT | $25.00 | | $550.00 |
| 10/19/2021 | Office Visit Jeryl Girton, NP | $25.00 | | $525.00 |
| 10/18/2021 | Office Visit Katelyn Miskevics, LMFT | $25.00 | | $500.00 |
| 10/11/2021 | Office Visit Katelyn Miskevics, LMFT | $25.00 | | $475.00 |
| 09/27/2021 | Office Visit Katelyn Miskevics, LMFT | $25.00 | | $450.00 |
| 09/20/2021 | Office Visit Katelyn Miskevics, LMFT | $25.00 | | $425.00 |
| 09/13/2021 | Office Visit Katelyn Miskevics, LMFT | $25.00 | | $400.00 |

# Exhibit N



**San Francisco Employees' Retirement System**
1145 Market Street 5th Floor, San Francisco, CA 94103
Telephone (415) 487-7000, 8 a.m. – 5 p.m. Monday-Friday

# Termination Options Form

☐ Initial Election

☐ Change (Date of initial election: _____ )

## 1. Member Information

| Name (First, Middle Initial, Last) | Social Security Number | Birth Date | Today's Date |
|---|---|---|---|
| CORY A. HORTON | 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 | 12/03/77 | 5/22/2022 |

| Mailing Address (Street, City, State, Zip Code) | Daytime Phone Number |
|---|---|
| 1500 Karen Dr    Benicia CA 94510 | 415 610-9094 |

**Employment Category (Check one box.)**

☑ Miscellaneous    ☐ Fire    ☐ Police    ☐ Miscellaneous Safety    ☐ Sheriff

Separation Date

**You must be completely separated from City employment to be eligible for a withdrawal.** Members who are on leave are not eligible for a withdrawal.  You are also not eligible for a withdrawal if you have filed an application for any other benefit offered by the Retirement System, or you are re-employed in any position by the City and County within 8 weeks after your separation date or filing date.

## 2. Termination Benefit Options

Choose one option.

☑ **Refund of Retirement Account.** You will receive a full refund of your retirement account (i.e., employee contributions plus interest). Complete Sections 3 and 6 of this form. **Please allow up to 8 weeks for delivery.**

☐ **Vest in Retirement Account.** You will leave your contributions and interest in your retirement account. Your account will be vested, which means you will be eligible for a vesting allowance in the future. Complete Sections 4 and 6 of this form.

☐ **Reciprocity.** You will leave your contributions and interest in your retirement account, regardless of years of credited service. If you become a member of another reciprocal California public system or another SFERS plan within six (6) months after termination of employment with the City/County of San Francisco, you may be eligible for an enhanced benefit from both SFERS and the other system. Complete Sections 5 and 6 of this form.

## 3. Refund Retirement Account

Complete this section only if you elected to receive a refund of your retirement account in Section 2 of this form. You have 2 distribution options: a direct distribution or a direct rollover to an IRA or other qualified retirement plan. You have 10 days from the date you file this form with SFERS to change your distribution election.

If you have five (5) or more years of credited service with SFERS you may be eligible to receive certain benefits from SFERS and Health Services.  The refund of your retirement account will terminate your right to receive any benefits for this service.  You must come in to speak with a retirement counselor before receiving your refund if you have more than five (5) years of credited service.

☑ **Direct Distribution.** SFERS must withhold a mandatory 20% of the taxable portion of your distribution for federal income taxes. You may elect to withhold an additional optional 2% for California state income taxes.  You may instruct us to withhold additional amounts.  In addition, a 10% federal tax penalty and 2½% California tax penalty may apply if you are under 59½ years old at the time of distribution.  Please see your tax advisor if you have questions about the potential tax penalty.

**Federal Withholding Option:**

☐ *In addition to* the mandatory 20% federal income tax withholding, withhold the following amount or percentage:

$ ⊘            OR      ⊘ %

**California State Withholding Options:**

☑ Do not withhold California state income taxes.

☐ Withhold the optional 2% California state income tax withholding

☐ Withhold the following amount or percentage:

$ ⊘            OR      ⊘ %

*Continued on next page.*

TERMOPT2017

1

**Termination Options Form**

MEMBER NAME     XXX-XX-_____

## 6. Member Acknowledgment

*If you complete this form outside the SFERS office, you must complete this section in the presence of a notary public.*

I have read all of the information attached to this form regarding my options at termination. I understand how my election(s) on this form will impact future benefits that may be payable by SFERS. I also understand the tax implications of these options.

_____
Member Signature                         Date

_____
SFERS Staff Signature                    Date

_CORY A. HORTON_
Member Name (please print)          Social Security Number

## 7. Notary

State of California

County of _____)

On _____ before me, _____
                                         *(insert name and title of the officer)*

personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____      (Seal)

## SFERS Use Only

Form completed at SFERS: ☐ Yes  ☐ No      Reviewed by: _____      Retirement#: _____
Date Received: _____            Date Approved: _____    Charter Code: _____
Staff: _____                    Staff: _____

TERMOPT2017

**Termination Options Form**

MEMBER NAME       XXX-XX-_____

☐ **Direct Rollover.** You may roll over the taxable portion of your distribution into one or two IRA/qualified retirement plan accounts. Be sure to indicate how much of your distribution—in percentages—should go to each account. If you do not indicate a percentage below, SFERS will split the distribution equally between both accounts.

| Name of Financial Institution/Qualified Plan | Name of Financial Institution/Qualified Plan |
|---|---|
| Street            *N/A* | Street            *N/A* |
| City                          State      Zip Code | City                          State      Zip Code |
| IRA Account No./Employer I.D. No. | IRA Account No./Employer I.D. No. |
| Percentage of Distribution to this Account | Percentage of Distribution to this Account |

## 4. Vest in Retirement Account

Complete this section only if you elected to vest in your retirement account in Section 2 of this form. Initial each paragraph to indicate that you understand their content.

I understand the following rules regarding vested retirement benefits:

*N/A*  I must leave my contributions and interest earned in my retirement account. The vesting allowance may begin at age 50 or later based on my plan. (Please see summary plan provisions for information on vesting requirements for your plan).

I may be eligible for reciprocity if I become a member of a reciprocal California public retirement system within 6 months after termination of employment with the City/County of San Francisco. I must notify SFERS that I am a member of a reciprocal system.

To apply to receive a vesting allowance, I must set up a retirement interview appointment with SFERS.

## 5. Reciprocity

Complete this section only if you elected reciprocity in Section 2 of this form. Initial each paragraph to indicate that you understand their content.

I understand the following rules regarding reciprocity:

*N/A*  To become eligible for reciprocity, I must become a member of a reciprocal California public retirement system within 6 months after termination of employment with the City/County of San Francisco.

If I am eligible to vest in my SFERS retirement account at the time I terminate employment with the City/County of San Francisco, I have 90 days from my termination date to change my *Reciprocity* election to *Vest*.

If I do not become eligible for reciprocity during the 6-month period following my termination, my SFERS retirement account (i.e., contributions plus interest to date) will be distributed to me automatically. 20% federal withholding and 2% California state withholding will apply to this distribution.

Complete the following information if you know the name of the reciprocal California public retirement system you are joining:

Name of Reciprocal System: _____

Address: _____

Contact Person/Telephone: _____

Hire Date: _____

TERMOPT2017