UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY A. HORTON,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>    Defendants. | Case No. 22-cv-03174-WHO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 85 |

Cory Horton brings 17 claims against his former employer, the City and County of San Francisco and the San Francisco Public Utilities Commission (collectively, "the City" or "defendants"). The core of Horton's complaint is that in the aftermath of a brutal assault that Horton suffered near his job site, the City discriminated against him based on his resulting disability and based on his race, failed to accommodate his disability, and retaliated against him by medically separating him.[1] The City moves to dismiss 10 of Horton's remaining 17 claims, specifically his *Skelly* claim and his claims for retaliation under Title VII, FEHA, the ADA, and various provisions of the California Labor Code. Claims 7, 8, 10, and 16 are dismissed with prejudice, but the rest survive.

**BACKGROUND**

Horton became employed as a stationary engineer with San Francisco Public Utilities Commission ("SFPUC") as a temporary employee in November 2019, and moved to a permanent position one year later. Third Amended Complaint ("TAC") [Dkt. No. 82] ¶¶ 6, 10. He worked at the SFPUC's headquarters near San Francisco's Tenderloin neighborhood, where his job

---

[1] Horton has represented himself throughout much of this litigation but was appointed counsel through the Federal Pro Bono Program; counsel assisted him with his opposition to this motion.

responsibilities included "supervising subordinate staff; building operation, maintenance, and repair of pumping, ventilating, and heating equipment"; inspecting the building daily; and operating and maintaining machines and equipment. *Id.* ¶¶ 6-7.

On the morning of August 12, 2020, Horton was assaulted by three men with a knife in the Tenderloin district, "within a few minutes" from his job site. *Id.* ¶ 13. Horton reported this incident to his supervisor and a safety officer the same day. *See id.* ¶¶ 25-26. On August 17, 2020, Horton emailed Maria Mabutas, a Facility Director at the SFPUC, indicating that he was concerned about his safety and well-being and needed an accommodation. *Id.* ¶ 16. He verbally asked Mabutas and his direct supervisor for modifications to his schedule and "assistance with ensuring job safety." *Id.* ¶ 18. The TAC alleges that Horton's "employer" (unnamed) asked him if he would consider driving to work and offered him a parking pass. *Id.* ¶ 19. Horton agreed to this arrangement but told his employer that driving his own vehicle to work "would create an enormous expense . . . equating to a specific pay cut." *Id.* Horton claims that despite the offer of a parking pass, he never received one, and instead, the four available parking passes went to coworkers who did not have disabilities, were not the victims of assault, and had not requested accommodation. *Id.* ¶ 21.

Horton returned to work on August 18, 2020. *Id.* ¶ 27. While performing his outside rounds, one of his attackers encountered him "in a disruptive threatening manner." *Id.* Horton alleges that "events of stalking, threats, intimidating, [and] harassment" by people he did not know continued as he performed his outside rounds from September through December 2020. *Id.* He further alleges that he was called the N-word at least once and was threatened by someone who said, "[m]urder the monkey." *Id.* ¶¶ 28-29. On another occasion, the TAC alleges, someone screamed, "[y]ou [f]uckin N [w]ord" at him while he was doing outside repairs. *Id.*

Despite filing complaints, Horton claims that "nothing was done to improve safety," and "no actions were taken by [his] employer" to "remediat[e]" the events involving racial epithets. *See id.* ¶¶ 28-30. Fearing for his life, Horton began carrying weapons to work. *Id.* ¶ 31. He also experienced blackouts, anxiety, panic attacks, and "issues interacting with others." *Id.* ¶ 32.

In December 2020, Horton took "non-related family medical leave." *Id.* ¶ 35. According

2

to the TAC, his "fears of discharging a weapon became more viable due to the increased incidents of harassment, intimidation, threats, [and] disruptive behavior, and fear of losing [his] life." *Id*. In February 2021, he began trauma therapy. *Id*. ¶ 37. His medical provider soon placed him out of work "due to impairment related to [his] disability." *Id*. Horton then made a second request for an accommodation, with another facility director, Rick Nelson, asking for a change of duty or remote work. *Id*.

Horton alleges that the subsequent accommodations process with individual SFPUC EEOC managers was "very disruptive, non-interactive, abusive, and combative." *Id*. ¶ 45. Horton's requests for remote work, "job restructuring," safe access to the building, and the ability to transfer jobs were denied, and he claims that his managers "insisted that leave would be the only option." *See id*. ¶¶ 46, 51. He claims that the accommodation process was "non-interactive, not in good faith, one sided, abusive . . . and left [him] with none of the help [he] needed." *Id*. ¶ 51. The TAC also alleges that Horton's employers "threatened" him to return to work despite his impairments or else he would be "terminated," and that certain individuals "limited [his] accommodations to leave despite having multiple options available." *Id*. ¶ 53.

Horton contends that "at no point was [his] condition deemed indefinite and at no time did [his] doctor indicate [he] was never able to return to work." *Id*. ¶ 60. The City informed Horton on August 19, 2021, in the context of an "Interim Accommodation" update, that his leave would not be extended indefinitely. *See* Second Amended Complaint ("SAC") [Dkt. No. 38] Ex. R (August 19, 2021, email from SPFUC Human Resources re: Interim Accommodation). Horton claims that he filed a complaint with the DFEH and EEOC on October 3, 2021, "regarding mistreatment by [SFPUC employers]" during the accommodation process. *Id*. ¶ 58. The TAC alleges that the defendants were "aware of the October 2021 EEOC and DFEH complaints that [he] filed." *Id*.

On October 23, 2021, the City informed him of its official intent to medically separate him. *See* SAC Ex. H (Notice of Intent to Medically Separate). Horton "pleaded with [his] employer for several reasonable accommodations to allow him to remain employed," but he was medically separated on November 30, 2021. TAC ¶ 60; SAC Ex. G (Notice of Medical

Separation).

After three amended complaints, the only remaining defendants are the City and County of San Francisco and the SFPUC. I dismissed several of Horton's claims asserted in the SAC with prejudice but granted him leave to amend others. Order Granting in Part and Denying in Part Motions to Dismiss ("Second MTD Order") [Dkt. No. 64]. Horton now asserts 17 claims. Defendants move to dismiss 10 of them or, in the alternative, for judgment on the pleadings. *See* Motion to Dismiss ("Motion" or "Mot.") [Dkt. No. 85].

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). This standard is not akin to a probability requirement, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts his allegations as true and draws all reasonable inferences in his favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig*., 536 F.3d 1049, 1055 (9th Cir. 2008).

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Where a plaintiff is proceeding pro se, the court has an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt. *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, pro se pleadings must still allege facts sufficient to allow a reviewing court to determine whether a claim

has been stated. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

Given the overlapping pleading standard for many of Horton's claims, I have grouped them for the purpose of streamlined analysis.

### I. RETALIATION - TITLE VII, FEHA, ADA, AND LABOR CODE § 1102.5 CLAIMS

Claims 2, 6, 13, and 15 state claims for retaliation under various federal and California state statues. To make a Title VII retaliation claim, the plaintiff must show that: "(1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). A claim for retaliation under FEHA, the ADA, or California Labor Code § 1102.5, must similarly show a causal link between plaintiff's engagement in a protected activity and an adverse employment action. *Derby v. City of Pittsburg*, No. 16-CV-05469-SI, 2017 WL 713322, at *13 (N.D. Cal. Feb. 23, 2017) (stating the elements of a FEHA retaliation claim); *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 864, n. 16 (9th Cir. 2016) (stating the elements of an ADA retaliation claim); *Derby*, 2017 WL 713322, at *11 (stating the elements of a retaliation claim under section 1102.5(b)).[2]

---

[2] In the Second MTD Order, I dismissed Horton's Title VII, FEHA, ADA and Cal. Lab. Code § 1102.5 retaliation claims without prejudice because as alleged, the SAC did not support an inference that he was medically separated because he engaged in a protected activity. He had failed to show a causal link between his complaints and his notice of medical separation and eventual separation from SFPUC. *See* Second MTD Order 10, n. 6. I directed him to amend his complaint if he was able. I also noted that the SAC did not allege that the defendants were aware of the October 2021 EEOC and DFEH complaints. I suggested that such an allegation might show a causal link between his protected action and his medical separation.

5

   Horton alleges that when he was medically separated in November 2021, the City was aware of the EEOC/DFEH complaints that he claims he filed on October 3, 2021. *See* TAC ¶ 74 ("I was . . . medically separated from employer on November 30, 2021 . . . Defendants were aware of the October 2021 EEOC and DFEH complaints that I filed."). He contends that this establishes the causal link necessary for his retaliation claims. The City argues that the record belies Horton's account; it directs my attention to copies of EEOC and DFEH complaints that Horton filed, which are dated February 4, 2022, and February 8, 2022, respectively. It requests that I take judicial notice of these documents, presumptively for their date. *See* Def.'s Request for Judicial Notice ("RJN") [Dkt. No. 85-1] Exs. A-B. I will take judicial notice of them as records and reports of administrative bodies, but they do not render Horton's retaliation claims implausible for two reasons.

   First, Horton alleges that he filed his complaints with the EEOC prior to the date listed on the documents that the defendants have produced—he claims that he filed with the EEOC and DFEH on October 3, 2021. *See* TAC ¶ 57. Given Horton's status as a pro se plaintiff throughout most of this case, I will construe his pleadings liberally, and take him at his word that he initiated some complaint process with the EEOC and DFEH in October 2021. Exhibit B to the City's reply brief at least weakly supports this position. It contains an email from the DFEH to Horton, sent on October 25, 2021, confirming that he had submitted an Intake Form at some point before that date. *See* Reply Brief ("Reply") [Dkt. No. 90-1]. It provides information about setting up an interview with the DFEH. *Id.* The mere existence of EEOC and DFEH complaints dated February 2022 does not foreclose the possibility that Horton at least began the process in October 2021, as this email suggests.

   Second, Horton points to a November 1, 2021, email exchange between himself and Dena Narbaitz to support his allegation that the City was aware of his EEOC and DFEH complaints when it medically separated him on November 30, 2021.[3] In the exchange, Narbaitz states that

---

[3] The City protests that since Horton did not attach this email to his TAC, I should not consider it. *See* Mot. 14; Reply 8. But given Horton's status as a pro se plaintiff throughout much of these proceedings and given that the email is attached as an exhibit to the City's reply brief, I will consider it. *See* Shapiro Reply Decl. ¶ 2, Ex. A.

6

1   Horton informed her that day, over a phone call, that he had filed a complaint against her. *See*
2   Dkt. No. 90-1, Ex. A. The City argues that the November 1, 2021, email cannot show a causal
3   link because it pertains to a conversation that Narbaitz had with Horton *after* October 23, 2021,
4   which was when the City informed him of its intent to medically separate him. *See* SAC Ex. H
5   (Notice of Intent to Medically Separate sent from Narbaitz to Horton, dated October 23, 2021).[4]
6   The City points out that where an employee is on notice of an intended adverse employment
7   action, that employee cannot "create a [retaliation] claim" by "making a complaint . . . before the
8   anticipated adverse action occurs." *See Diego v. City of Los Angeles*, 15 Cal. App. 5th 338, 364
9   (2017).

10  But that is not necessarily what happened here. The October 25, 2021, email from the
11  DFEH, discussed previously, allows for at least the possibility that Horton submitted an intake
12  form with the DFEH at some point prior to October 23, 2021, and his employers became aware of
13  that. *See* Reply, Ex. B (email providing information about scheduling an intake interview with the
14  DFEH, dated October 25, 2021). In other words, it is possible that *before* Horton received the
15  City's official notice of intent to medically separate him, he initiated complaint proceedings with
16  the DFEH, and the City found out. The City insists that Horton cannot uncover through discovery
17  when exactly the City became aware of his EEOC and DFEH complaints. In its motion, Reply,
18  and at the hearing on February 21, 2024, the City argued that "only three sets of persons" could
19  have informed the City about Horton's DFEH/EEOC complaints: Horton, the DFEH, or the
20  EEOC. *See* Reply 7. It contends that Horton "should know when and if he informed the City of
21  his complaints," but that Horton has not alleged any facts to that effect. *Id.*

22  Discovery will reveal when the City became aware that Horton had filed or was going to
23  file complaints with the EEOC and DFEH. The City may be correct that Horton filed his
24  complaints on a timeline that disproves any causal link between that protected action and his
25  eventual separation. But for now, I will take his allegations, and the weak causal link they allow

---

[4] Prior to receiving the official notice of intent, the City did inform Horton that "it [did] not appear that additional leave [was] reasonable under the circumstances," so medical separation might be justified down the line. *See* SAC Ex. R (a letter sent from Narbaitz to Horton on August 19, 2021).

7

for, to be true. The motion to dismiss Claims 2, 6, 13, and 15 is DENIED.[5]

## II.  CALIFORNIA LABOR CODE CLAIMS

After the second amended complaint, all California Labor Code claims were allowed to proceed because the only asserted defense was that the claims were not properly pleaded against individual defendants. Now, Horton asserts these claims against the City, and the City responds with more substantive defenses.

### A.  Claims 7, 8: California Labor Code §§ 230(c) and 230.1

Labor Code section 230(c) provides: "An employer shall not discharge or in any manner discriminate or retaliate against an employee who is a victim for taking time off from work to obtain or attempt to obtain any relief." Cal. Lab. Code § 230(c). Section 230.1 extends this protection to various reasons for taking time off, including to "seek medical attention for injuries caused by crime or abuse." Cal. Lab. Code § 230.1(a). I previously denied the defendants' motion to dismiss these claims because they had only asserted one defense: that the statute did not create a private cause of action. *See* Second MTD Order 14. But now, the City has updated its motion, and its new defense prevails.

Section 230(c) does not allow an employee to take indefinite leave of absence; its protection is capped by limitations set out by federal labor codes. *See* Cal. Lab. Code § 230.1(f). The statute "does not create a right for an employee to take unpaid leave that exceeds the unpaid leave time allowed under, or is in addition to the unpaid leave time permitted by, the federal Family and Medical Leave Act of 1993 [FMLA]." *Id.* The FMLA allows a maximum of 12 workweeks of leave for a twelve-month period, and according to the TAC, Horton was on leave for approximately 39 weeks. *See* 29 U.S.C. § 2612; *see also* Mot. 19:17-25; TAC ¶ 37, 59.[6]

---

[5] Plaintiff's retaliation claims under the ADA, Cal. Labor Code and FEHA are now plausibly alleged for the same reason as his Title VII retaliation claim is plausibly alleged. Taking the facts, as pleaded, as true, as I must, I can infer that the City knew about the complaints that Horton filed and took adverse employment action against him as a result.

[6] In his Opposition, Horton appears to conflate pleadings under Cal. Lab. Code §§ 230(c), (e), and (f). The TAC only alleges violations of sections 230(c) and (e), and section 230.1. As such, I will confine my analysis to whether Horton has plausibly alleged violations of these three sections.

1   Any cause of action that Horton has under section 230(c) would need to arise from an
2   allegation of some adverse employment action taken against him within that 12-week period
3   where he was permitted unpaid leave under the FMLA.  In the absence of such an allegation,
4   Horton's section 230(c) claim fails as a matter of law.  Horton points to no caselaw where a court
5   has allowed a section 230 claim to proceed when the plaintiff took more leave than is protected
6   under the FMLA.  In the absence of such caselaw, his claim cannot proceed.  The motion to
7   dismiss Claims 7 and 8 is GRANTED without leave to amend.

### B.      Claim 10: California Labor Code § 230(e)

Labor Code Section 230(e) provides: "An employer shall not discharge or in any manner discriminate or retaliate against an employee because of the employee's status as a victim of crime or abuse, if the employee provides notice to the employer of the status or the employer has actual knowledge of the status." Cal. Lab. Code § 230(e).  Horton alleges that the City medically separated him because it knew he was a victim of a crime.  TAC ¶ 135-137.  Against this charge, the City points out that the City knew of Horton's status as a victim in August 2020, *see* TAC ¶¶ 16, 20, and did not medically separate him until November 2021.  Mot. 20:3-10.  Without further evidence suggesting that Horton's status as a victim drove the decision to medically separate him—which across three amended complaints, he has been unable to produce—this claim is not plausibly alleged.  The motion to dismiss Claim 10 is GRANTED without leave to amend.

### C.      Claim 16: California Labor Code § 6310

Labor Code Section 6310 prohibits retaliation against persons for filing complaints regarding employee safety or health.  *See* Cal. Lab. Code § 6310(a).  The TAC alleges that Horton "reported his injuries to the defendants on multiple occasions, filed a police report assault [sic] and later a restraining order with [the] DA." TAC ¶ 160.  It further alleges that he "sent emails stating in detail fears and hazards of the workplace and possible recurring trauma directly to the building manager." *Id.*

Horton's claim fails because Horton alleges that he first complained about working conditions at SFPUC in August 2020.  TAC ¶ 16.  But Horton was not medically separated until November 30, 2021.  Moreover, as I remarked in the prior order, between August 2020 and

1   November 2021, the City extended his leave several times.  *See* Second MTD Order 10, n. 6.  In

2   his Opposition, Horton provides no additional support for his section 6310 claim.  I cannot infer

3   from these facts that Horton was medically separated in retaliation for reporting an unsafe work

4   environment; the temporal proximity is too attenuated, and the claim is otherwise unsupported.

5   The motion to dismiss Claim 16 is GRANTED without leave to amend.

### D. Claim 17: California Labor Code § 6311

California Labor Code section 6311 prohibits retaliation for refusal to work in violation of health and safety standards.  The City's first defense against the section 6311 claim is once again a lack of temporal proximity—it argues that Horton has failed to show a causal link between his complaint and his medical separation because the separation took place several months after he first complained about his working conditions.  But this claim is more plausibly pleaded than Claim 16 and the lack of relative temporal proximity does not foreclose it.

The City also argues that the TAC does not allege that he refused to work because of safety concerns; it contends that the facts as pleaded show that Horton refused to work because he was on medical leave and was not yet cleared to work.  Mot. 21:4-20.  The case the City cites in support of this argument is inapposite; it is a summary judgment ruling, where on a fully developed record the court determined that it was "undisputed" that the plaintiff never refused to work because of workplace safety concerns and granted summary judgment for the defendant on the plaintiff's section 6311 claims accordingly.  *See Caldwell v. OS Rest. Servs., LLC*, 2021 WL 3264306, at *8 (C.D. Cal. May 13, 2021).  Here, at the pleading stage, Horton is held to a lower standard.  He argues in opposition that it is reasonable to infer from the TAC that he was not reporting to work because of his "fears of re-traumatization" and his work in "an unsafe, terrifying, and hostile work environment."  Oppo. 11:26-12:8; TAC ¶ 28.  Moreover, the TAC alleges that while he was seeking accommodation and receiving treatment while on medical leave, he was "wrongfully terminated for not returning to the perceived unsafe work locations."  *Id.* ¶ 160.

Taking the pleaded facts as true, it is plausible that Horton refused to return to work at least in part because of workplace safety concerns.  Whether and to what extent this is true, and

1    whether it truly contributed to the City's decision to medically separate him, will be decided on a
2    more complete record. The motion to dismiss claim 17 is DENIED.

### III. *SKELLY* CLAIM

Claim 9 asserts a violation of "Personnel Rule 52.3." While the origin of this rule is still unclear, the claim itself is obviously stylized as a *Skelly* claim. *See* TAC ¶¶ 130-134; *see also* Second MTD Order 21. I will evaluate it as such.

"A Skelly hearing refers to the due process meeting required under *Skelly v. State Personnel Board*, when a public employee faces a potential deprivation of his or her property interest as an employee." *Lopez v. City & Cnty. of San Francisco*, No. 12-CV-06523-MEJ, 2014 WL 2943417, at *1 n.1 (N.D. Cal. June 30, 2014) (internal citations omitted); *see also Skelly v. State Personnel Board*, 15 Cal. 3d 194 (1975). At minimum, under *Skelly*, "preremoval safeguards must include notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond." *Skelly*, 15 Cal. 3d at 215. I previously gave Horton leave to amend his *Skelly* claim. Horton has added two allegations to the TAC that he contends support his *Skelly* violation claim: first, that he was unaware that the informal hearing via phone call was a *Skelly* hearing, and second, that Narbaitz was not a neutral officer. The first allegation is easily refutable, but the second is sufficient to sustain his *Skelly* claim, for now.

#### A. Procedural Safeguards

The TAC does not allege facts that would allow me to infer that Horton did not know that the hearing was a *Skelly* hearing. The City is correct that it did not have to *call* it a *Skelly* hearing for it to qualify as one. Horton was on notice about all the elements of what was going to happen in the meeting; he knew what it was.

Horton responds that the defendants did not "provide[] any opportunity to contest the employer's decision or findings regarding disability." TAC ¶ 131; Oppo. 13:14-21. He also claims that the City's "HR department failed to implement the [*Skelly* rule] when it decided to terminate [him] for medical reasons," and that the City "intentionally failed to provide [Horton] with the process he was due as a permanent public employee to challenge its conclusion that he

11

1    was disabled and that he should be terminated." TAC ¶ 131. He alleges that various individuals
2    who are no longer named defendants along with the SFPUC "all failed to notify [him] of time
3    sensitive union grievances that were available and intentionally withheld time sensitive
4    information," and that he was "never notified of the grievance process by an employer available
5    with the union." *Id.* ¶¶ 131-132. He contends that "[w]hile [he was] on leave, defendant
6    medically terminated [him] without any opportunities to contest the decision." *Id.*

   But as I noted in the prior order, all of these allegations are contradicted by exhibits produced by the defendants showing that they did inform Horton of his medical separation, *see* SAC Ex. H ("Notice of Intent to Medically Separate"), that they informed him he could bring a representative of his choice to the "interactive process meeting," *see id.*, and that he could submit any relevant materials for SFPUC's consideration.[7] This argument fails.

### B. Non-Neutral Officer

Horton also claims that Dena Narbaitz, his *Skelly* hearing administrative officer, was not a neutral officer, as is required by law. *See* TAC ¶ 134. To allege that an administrative law officer is non-biased, a "party must allege concrete facts that demonstrate the challenged judicial officer is contaminated with bias or prejudice." *Andrews v. Agricultural Labor Relations Bd.*, 28 Cal.3d 781, 791 (1981). Due process may not require a "perfectly impartial hearing officer," *see Linney v. Turpen*, 42 Cal. App. 4th 763, 770-771 (1996), but the California Supreme Court has established that due process does require a "reasonably impartial, noninvolved reviewer." *Williams v. County of Los Angeles*, 22 Cal. 3d 731, 737 (1978).

The City insists that Horton has pleaded no facts that would allow me to infer that Narbaitz was not a neutral officer, but I disagree. First, as I have noted above, the TAC asserts that the City was aware of the October 2021 EEOC and DFEH complaints that Horton says he filed. TAC ¶ 59. I have already explained why this is plausible. In his Opposition, Horton argues that since he filed the TAC, the City produced documentary evidence "indicating that [the defendants] were aware,

---

[7] While these exhibits are no longer attached to the operative complaint, I will still consider them, as they were attached to the previous complaint.

as early as November 1, 2021, of the DFEH and EEOC complaints that Mr. Horton filed in October 2021," and evidence of a "November 1, 2021 email [where] Dena Narbaitz … the individual who conducted the Skelly hearing, acknowledged that '[Horton] has filed a DFEH and EEOC complaint against me.'" Oppo. 1:17-27. This is presumably the same email I referenced earlier. *See* Dkt. No. 90-1 (email from Narbaitz summarizing phone conversation with Horton on November 1, 2021, stating that he told her he filed a DFEH and EEOC complaint against her).

In Reply, the City contends that this is still not enough. It argues that even if Horton had filed complaints against Narbaitz that she knew about when she acted as his *Skelly* officer, that does not make her impermissibly biased. *See* Reply 2-6. The City cites caselaw stating that an officer who investigates misconduct or initiates discipline against an employee may still serve as a neutral *Skelly* officer without violating due process. Reply 4-5; *Flippin v. Los Angeles City Bd. of Civil Service Commissioners*, 148 Cal. App. 4th 272, 281 (2007). This can be true and discovery may prove the City's point; Narbaitz may ultimately prove to have been a neutral reviewer for Horton's pretermination hearing, even if she was aware of complaints that Horton had filed against her. But at this stage, Horton has plausibly alleged impermissible bias in the TAC, not to mention the evidence he discusses in his Opposition. The motion to dismiss Horton's *Skelly* claim is DENIED.

## CONCLUSION

The motion to dismiss Claims 7, 8, 10, and 16 is GRANTED and those claims are DISMISSED with prejudice. The motion is DENIED with respect to all other claims.

**IT IS SO ORDERED.**

Dated: April 11, 2024

William H. Orrick
United States District Judge